Emma Kaleleonalani v. J. M. Smith et al., Trustees Lunalilo Estate.

## SUPREME COURT—IN BANCO.

### JANUARY TERM—1878.

*Harris, C. J., and McCully, J.*

EMMA KALELEONALANI. *vs.* J. M. SMITH, E. O. HALL AND S. B. DOLE, TRUSTEES OF THE ESTATE OF HIS LATE MAJESTY LUNALILO.

#### ON EXCEPTIONS.

HIS LATE MAJESTY LUNALILO devised to plaintiff "the premises at Waikiki known as my Marine Residence." The defendants surrendered to plaintiff certain premises at Waikiki, about four acres in extent, on which stood the residence, a detached cottage and the outbuildings. Plaintiff brought this action to recover twenty-five acres, the remaining portion of this tract of land;

Emma Kaleleonalani *v.* J. M. Smith *et al.*, Trustees Lunalilo Estate.

HELD, it was no error for the Court to admit evidence to show what was "known as the Marine Residence," on the ground that there was a latent ambiguity in these words. Much of the evidence thus admitted proved nothing, because relating to a period before these premises were known as a marine residence, and the Court charged the Jury to disregard it altogether.;

HELD, no ground for a new trial, there being sufficient legal evidence to support the verdict.

Opinion of the Court by McCULLY, J.

(Justice JUDD having drawn the codicil referred to, and testified in the case, did not sit.)

The matter before the Court may be stated thus : The plaintiff herein is the devisee under the second item of the codicil of the will of His late Majesty Lunalilo, in these words:

"Second—After the decease of my father, I devise the premises at Waikiki, Oahu, known as my Marine Residence, to Queen Emma, her heirs and assigns forever."

Upon the death of the father, the defendants were constituted trustees, as provided in the will, and took possession of the whole estate. In pursuance of the codicil they put the plaintiff in occupation of certain premises at Waikiki, of about four acres in extent, on which stand the residence, a detached cottage and the outbuildings. These premises are a portion of a tract called by Hawaiians "Kaluakau." Action of ejectment was brought at the October Term to recover the remaining twenty-five acres, and verdict rendered for the plaintiff. The bill of exceptions, and the instructions given or refused on the defendants' part will complete the statement of the case.

### BILL OF EXCEPTIONS.

The plaintiff claimed certain land (as set forth by metes and bounds in her declaration) as part of Lunalilo's Marine Residence at Waikiki, under the devise to her of that property.

I. The plaintiff's counsel offered evidence to show the testator's understanding of the term "Marine Residence," and of his use of the land claimed as part of his "Marine Resi-

dence," and that the land claimed was necessary or convenient to the use of the premises by reason of the water source being on it, and kalo being raised there, to the admission of which evidence the defendants' counsel objected, and they duly excepted to its admission by the Court.

II.   The plaintiff's counsel offered evidence of what was known and used as the "Marine Residence" in 1863, and at various other dates prior to 1872, the date of the testator's will, to the admission of which evidence defendants' counsel objected and duly excepted to its admission by the Court.

III.   The evidence of the plaintiff showed that the plaintiff is now in possession of a certain parcel of land, and the buildings thereon marked as "Pahale" on the plan filed herein by her counsel.   That said house lot was enclosed on all sides in such manner as to keep out animals or with the object of keeping out animals.

On this evidence the defendants' counsel moved the Court to rule that a verdict should be rendered for the defendants, and duly excepted to its refusal of such motion.

IV.   When all the evidence on both sides was closed, the defendants' counsel moved the Court to instruct the jury that a . verdict for the defendants should be rendered, and duly excepted to the refusal of such motion.

Instructions given for the defendants are hereto appended. The exceptions are allowed.

INSTRUCTIONS ASKED BY DEFENDANTS AND GIVEN, EXCEPT THE FOURTH.

I.   The plaintiff is entitled under the will only to the premises which, at the testator's death, was known as his "Marine Residence."  If the land marked as "Pahale," meaning "house lot," on the plaintiff's survey, is all that the will called for, the plaintiff cannot recover, and the defendants are entitled to a verdict.

II.   It is immaterial whether the land claimed would be of use or convenience to the owner of the "Marine Residence"

or not, or that the testator owned it, for he has not devised all his land at Waikiki, nor all of the land called "Kaluakau," but merely his residence, and nothing can be taken under this devise, except what strictly and necessarily is to be regarded as the "Marine Residence."

III. As the residence did not receive its name until about 1872, the earlier bounds of the testator's property, as used for his grass-house, are immaterial to this case, and evidence in regard to it is to be disregarded.

IV. The evidence is insufficient in law to sustain a verdict for the plaintiff. (This instruction refused.)

V. If the jury have doubt as to the extent of the devise, the defendants are entitled to a verdict, or, in other words, the burden of proof is on the plaintiff, which burden of proof is to be held more strictly than in ordinary cases.

VI. The question of right of way to the mauka land is immaterial, as the occupants of that land will look out for themselves.

### PER CURIAM.

The plaintiff offered evidence to show what was "known as my Marine Residence," on the ground that there was a latent ambiguity in the words expressing the subject devised. Taking Lord Bacon's definition of *ambiguitas latens*—"that which seemeth certain and without ambiguity for anything which appeareth upon the deed or instrument, but there is some collateral matter out of the deed that breedeth the ambiguity." It would seem that there was such an ambiguity here from the fact that the buildings were placed at one end of a large tract of land, and as the plaintiff claimed not set off by a definite partition and not separated in use from the portion delivered to the plaintiff. As the plaintiff claimed that the whole tract was "known" as the premises intended to be devised, she should have been permitted to show it by evidence if she could. Upon the question of treating this as a latent ambiguity, we may well say with Metcalf, J., in American

Bible Society *vs.* Pratt, 9th Allen, "the cases on this subject are numerous, they are also irreconcilable, as was said by Lord Abinger and by Shaw, C. J.," but from a consideration of the different phrases to which it has been permitted to apply parole testimony, we judge that the present subject of devise and the terms describing it warrant and require it. It cannot, therefore, be said that testimony to that point was irrelevant. But after it was in it appeared that a considerable part of it did not prove anything for the plaintiff, namely, the testimony of the Hawaiian witnesses covering the time from 1860 to about 1872, for they knew nothing of a "Marine Residence," and they, as well as all the other witnesses showed that nothing corresponding to such was in existence in those years. Whereupon the Court instructed the jury that that evidence had failed altogether, that it must be excluded from consideration, because it had proved nothing. But it is evident that if the plaintiff had been able to show by these witnesses that the whole of the tract in question had been known in all those years by the devisor and by his retainers and friends as his "Marine Residence" at Waikiki, such would be the very evidence requisite and admissible to explain the latent ambiguity or controversy in the interpretation of the codicil. The fact that it fell short and proved nothing was not a reason why it should not have been admitted. The Court could not beforehand know that it would fail, and when it had so failed it instructed the jury to disregard the attempt.

But we desire to place our decision on this point on a broader ground than this, that the evidence in question was properly admitted in the first instance, and to hold the doctrine that if evidence has been wrongly admitted because it was incompetent or irrelevant, and if the Judge shall, upon its appearing to be such, instruct the jury to disregard it, it is not a ground of exception. The jury is sworn to render verdict according to law, and, by our statute, must receive the law from the Court. When the Court has instructed that some-

thing which they have heard is not to be considered by them, we must presume in favor of their oath and public duty. It is true this presumption might be overcome by their rendering a verdict which had no evidence to support it, but that which had been excluded by the Court. The case cited in this point by defendants' counsel—Farnum *vs.* Farnum, 13 Gray, 508—supports this view. Certain evidence having been wrongly admitted for the purpose of showing that notes had been signed. "The remark of the Court to the jury that this evidence would be immaterial unless the plaintiff applied the proceeds of that property to the payment of those notes (of which there does not appear to be any proof) was not sufficient, we fear, to prevent a wrong effect on the jurors' minds from the introduction of that evidence." But in the case under consideration it appears there was unobjected evidence to support the verdict. However, the Court might have rendered its opinion on all the evidence if the matter had been submitted without a jury, it cannot be said that a verdict for either side would have been without evidence or against greatly preponderating evidence. Such being the case, the Court cannot speculate if the jury may have been influenced by the excluded evidence. In Farnum *vs.* Farnum, the Court feared that the remark of the presiding Judge was not sufficient to exclude the testimony from consideration, and, therefore, held the exception good, but in our case the instruction —No. 3—asked for by defendants, was given in terms with further remarks of the same tenor, making the instruction distinct and emphatic. The view of this Court in the King *vs.* Paakaula, 3d Haw. Rep., p. 30, is, therefore, in point and a precedent. The language of the Court there is: "It is contended further, by the counsel for the prisoner, that as testimony was admitted on the trial, which was subsequently ruled out, the presumption is that it left an impression on the minds of the jury adverse to the prisoners, and, therefore, a new trial should be granted. It occasionally happens that testimony is

admitted and subsequently ruled out; but in such cases the Court should expressly declare to the jury, as was done in this case, that the testimony is to be entirely disregarded, and it is the solemn duty of the jury to regard the charge. This is not unfrequently done in the course of a new trial, but it is a new doctrine that it should defeat the whole proceedings."

The only instruction refused to defendants was the fourth. But on examination of the evidence sent up with the bill of exceptions we fail to see how it could have been given. The testimony of Crabbe and Kaai supports the verdict, and is sufficient in law if the jury have taken that rather than the testimony given for the other side. Not that taking either view was a matter of discredit to the veracity of the witnesses supporting the other, for the subject was somewhat of the nature of an opinion as to what witness had "known" as the certain premises. It cannot be said that the testimony on either side was of the most decisive and positive character, and it was plainly the province of the jury to find which of that put before them preponderated, and the Court may not set such finding aside. The exceptions are overruled.

C. Brown and E. Preston for plaintiff.

A. S. Hartwell and S. B. Dole for defendants.

Honolulu, January 28, 1878.