**DAVIS, Agent, v. CALLEN.   (No. 932.)**

(Court of Civil Appeals of Texas. Beaumont. April 5, 1923. Rehearing Denied April 18, 1923.)

1. **Master and servant ⊚➯110—Federal act imposes on railroad absolute duty to keep shaker bar on engine in safe condition.**

In an action by a railroad fireman for injuries by a fall caused by the shaker bar, used for moving the grates in a fire box slipping off the lever, it was not error to refuse to instruct that there could be no recovery if the shaker bar and lever connected therewith were in a reasonably safe condition, so that they could be operated without unnecessary peril to the life or limb, since, under Boiler Safety Appliance Act Cong. § 2 (U. S. Comp. St. § 8631), defendant was under the absolute duty to keep the shaker bar in proper condition and safe to operate, so that it could have been used by plaintiff without unnecessary peril to life or limb.

2. **Master and servant ⊚➯204(2), 228(2)—Assumed risk and contributory negligence not available defenses in case of violation of Safety Appliance Law.**

In a railroad fireman's action under Boiler Safety Appliance Act Cong. § 2 (U. S. Comp.

St. § 8631), for personal injuries sustained through the defective condition of a shaker bar on an engine, it was not error to refuse to submit the issues of assumed risk and contributory negligence.

3. **Evidence ⊚➯195—Mechanical model of appliance bar held admissible to illustrate mechanical principle.**

In an action by a railroad fireman for injuries sustained because of the defective condition of a shaker bar on an engine, a mechanical model of the bar was properly admitted in evidence and allowed to be inspected by the jury while deliberating on their verdict, the model being offered by plaintiff to illustrate a mechanical principle.

4. **Appeal and error ⊚➯1170(7)—Allowing employé to testify that he exercised care in work in which he was injured held not reversible error.**

In an action by a railroad fireman for injuries sustained through the defective condition of a shaker bar on an engine, it was not reversible error to permit plaintiff to testify that in using the bar he exercised care, plaintiff also stating in detail the manner in which he used the bar at the time he was hurt, in view of rule 62a (149 S. W. x).

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by James Callen against James C. Davis, Agent, etc. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, for appellant.

Jones, Sexton, Casey & Jones, of Marshall, for appellee.

WALKER, J. On or about the 30th day of March, 1919, appellee was in the service of Morgan's Louisiana & Texas Railroad & Steamship Company as fireman on one of its engines operating between Lafayette, La., and Baton Rouge, La., engaged in interstate commerce. While he was manipulating the shaker bar used for shaking and moving the grates in the fire box, the bar slipped off of the lever by means of which the grates were operated, thereby causing him to fall and receive the injuries for which he was awarded compensation in this suit. No question is before us as to the extent of the injuries, nor the manner in which they were received. There was a sharp conflict as to the character of the shaker bar used. Appellee contended that the one he was using at the time he was injured had the slot in the end of the bar, while appellant contended that the slot was made by Cuffs on the side of the bar, and that it had no slot in the end. Each party offered before the jury a model of a shaker bar and its appliances, illustrating the bar in use according to their respective contentions. Appellant claimed that the model offered by him was the one actually used by

appellee. This was denied by appellee, and he testified that the model introduced by him was similar to the one in use, and that the bar in use had the slot in the end. It is sufficient to say, without quoting it, that the evidence on this issue raised an issue in appellee's favor, which we will not disturb.

The trial court submitted the case to the jury on the following charge, omitting the instructions as to plaintiff's measure of damage and other formal parts of the charge:

"Gentlemen of the Jury: Under the law it was the duty of the carrier to have the shaker bar and stem, about which complaint is made in this suit, in proper condition and safe to operate in the service to which it was put, so that it might be employed in the active service of such carrier in moving traffic without unnecessary peril to life and limb. Therefore, if you believe from the evidence that the carrier, its officers or agents, permitted such shaker bar and stem to become worn and in that respect failed to have said appliances in proper condition and safe to operate in the service so that the same might be employed in the active service without unnecessary peril to life or limb, and if you further believe that such failure caused or contributed to cause plaintiff's injuries, and that such injuries would not have occurred except for such failure, then you will find for the plaintiff, and unless you do so find your verdict should be for the defendant. If you find that the shaker bar and stem, at the time of the injury to plaintiff, were in proper condition and safe to operate in the service to which the same were put, so that the same might be employed in such service for moving traffic without unnecessary peril to life or limb, you will find for the defendant, even though you may believe that such shaker bar became disconnected while being used by the plaintiff and plaintiff was injured thereby. Again, if you believe that said appliances were in proper condition and safe to operate in the service without unnecessary peril to life or limb, but you further find that the parts became disconnected by reason of the way in which plaintiff used and handled such appliances, then the defendant would not be responsible for the plaintiff's injuries, and you will find in defendant's favor."

Appellant concedes that the charge as given embraces the language of section 8631, United States Compiled Statutes, which is section 2 of the Boiler Safety Appliance Law, as enacted by Congress in 1911 and amended in 1915 (U. S. Comp. St. § 8639ab), but he insists that the trial court should have construed the language used in this charge, and as supplying the omission, requested that the following special charge be given:

"While the law known as the Safety Appliance Act requires a defendant company to keep its locomotive and all appurtenances thereto in a proper condition and safe for the operation of said locomotives, without unnecessary peril to life or limb of the employees of the defendant company, you are instructed that if you find at the time that the plaintiff received his injuries that the shaker bar and lever connected therewith was in a reasonably safe condi-

tion, so that the same could be used and operated without unnecessary peril to the life or limb of the plaintiff, or other employees of the defendant, if used in a proper way and manner, then the defendant would not be liable, even though the shaker bar became disconnected. The defendant is not the insurer of the safety of its employees and is only required to see that its boiler and appurtenances are so constructed and kept in such proper and safe condition as to be used by its employees without unnecessary peril to life or limb, and if you find that said shaker bar and lever connected therewith was in such a condition when used by the plaintiff as not to unnecessarily place in peril the life or limb of the plaintiff, then you are instructed that you will return a verdict for the defendant."

In his argument, appellant thus states his position on the issue involved in this special charge:

"The case having been submitted to the jury under the general charge, the defendant was entitled to have the jury correctly instructed with reference to the law applicable to the defensive issues raised by the evidence. If our contention is correct that the Safety Appliance Act does not make a railroad company absolute insurers of the safety of the appurtenances attached to its boiler, but only to exercise ordinary care to see that they are reasonably safe and proper, then the defendant was entitled to the special instruction requested. The Safety Appliance Act provides that the boiler and appurtenances of a railroad company engaged in interstate commerce shall be in a proper and safe condition to operate in the service for which the same is put, without unnecessary peril to life or limb of its employees. The expression that the attachments to the boiler shall be in such a safe and proper condition as not to unnecessarily imperil the life or limb of the employees, carries with it—at least by implication—that the appurtenances shall not be in such safe or proper condition as to absolutely prevent injury to its employees. The words 'so as to unnecessarily endanger the life or limb of its employees' means, and can only mean, that if the appurtenances are in a reasonably safe condition so that it can be used by the exercise of ordinary care so as not to unnecessarily imperil the life or limb of its employees, the defendant would have fully complied with the Safety Appliance Act."

And again:

"The question before the jury was * * * whether the particular shaker bar used by the defendant was reasonably safe and proper."

The second section of the Boiler Safety Appliance Act, being section 8631, United States Compiled Statutes, is as follows:

"That from and after the first day of July, nineteen hundred and eleven, it shall be unlawful for any common carrier, its officers or agents, subject to this act to use any locomotive engine propelled by steam power in moving interstate or foreign traffic unless the boiler of said locomotive and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put, that the same may be employed in the active service of such

carrier in moving traffic without unnecessary peril to life or limb, and all boilers shall be inspected from time to time in accordance with the provisions of this act, and be able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."

Appellant has not correctly construed this section. In Railway Co. v. Donaldson, 246 U. S. 121, 38 Sup. Ct. 230, 62 L. Ed. 616, Ann. Cas. 1918C, 581, the Supreme Court held:

"That the federal Boiler Inspection Act was enacted for the safety of employees is obvious."

In construing the Safety Appliance Acts, the Supreme Court of the United States has expressly held that the purpose of Congress in enacting this legislation was—

"to supplant the qualified duty of the common law with an absolute duty deemed by it more just." Railway Co. v. Taylor, 210 U. S. 295, 28 Sup. Ct. 621, 52 L. Ed. 1061.

See, also, Railway Co. v. Rigsby, 241 U. S. 33, 36 Sup. Ct. 482, 60 L. Ed. 874; Railway Co. v. Williams, 242 U. S. 462, 37 Sup. Ct. 128, 61 L. Ed. 437.

In Lancaster & Wight v. Allen, 110 Tex. 213, 217 S. W. 1032, in construing this act, speaking for our own Supreme Court, Judge Greenwood said:

"But where a statute requires the common carrier to furnish certain equipment, or to furnish equipment in a certain condition, and the carrier violates the statute, and thereby causes death or injury to an employee, the violation of the statute fixes liability for the consequent damages. * * * We think that the Supreme Court of the United States refuted the contention that there could be any test of negligence save that of compliance with the law in cases involving violations of any of the provisions of a federal Safety Appliance Act, when the court, per Justice Pitney, said: 'As was stated in Tex. & Pac. Ry. v. Rigsby, 241 U. S. 33, 39 (36 Sup. Ct. 482, 484, 60 L. Ed. 874): "A disregard of the command of the statute (Safety Appliance Act) is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied." If this act is violated, the question of negligence in the general sense of want of care is immaterial. 241 U. S. 43 (36 Sup. Ct. 482, 60 L. Ed. 874), and cases there cited. But these two statutes are in pari materia, and where the Employers' Liability Act refers to "any defect or insufficiency, due to its negligence, in its cars, engines, appliances," etc., it clearly is the legislative intent to treat a violation of the Safety Appliance Act as "negligence"—what is sometimes called negligence per se.' S. A. & A. P. Ry. Co. v. Wagner, 241 U. S. 484, 36 Sup. Ct. 630, 60 L. Ed. 1110."

[1] As we understand these decisions, the duty of defendant to keep the shaker bar "in a reasonably safe condition" was not involved, for, as said by the Supreme Court of the United States, in the case quoted from by Judge Greenwood, supra, "The question of negligence in the general sense of want of care is immaterial." Appellant was under the absolute duty to keep the shaker bar in proper condition and safe to operate, so that it could have been used by appellee "without unnecessary peril to life or limb." As Congress has used language charging a railroad company with the absolute and unqualified duty to have certain of its appliances in a safe condition at all times, the Supreme Court of the United States has held, in the decisions cited supra, that it is the duty of the courts to do nothing less than give full force to the language of the statute. The charge requested by appellant emasculated the act, and measured his duty to appellee by the rules of common law. Therefore the trial court correctly refused to submit it.

Appellant would distinguish this case from those cited, supra, on the ground that the Interstate Commerce Commission has not promulgated any rule defining how tight the shaker bar must fit over the end of the lever attached to the grates. In answer to this, it is sufficient to say that his duty in this respect was fully defined by the statute and submitted to the jury in the charge as given. As we understand the Safety Appliance Acts and the decisions construing them, the Interstate Commerce Commission has the express authority to prescribe the character of appliances to be used, but when this power has not been exercised by it in relation to any particular appliance, the railroad company must exercise its common-law duty in selecting such appliance, but, when the selection has been made and the appliance placed in the hands of an employee, it then rests under the absolute duty to keep it in a safe and proper condition, so that it can be used "without unnecessary peril to life or limb."

[2] As neither assumed risk nor contributory negligence on the part of appellee was a defense against his cause of action, the court did not err in refusing to submit such issues to the jury. All propositions raising these issues are overruled.

[3] Appellant excepted to the introduction before the jury of the mechanical model offered by appellee to illustrate his theory as to the character of shaker bar used at the time of the injury. Also he excepted to the inspection of this model by the jury while deliberating on their verdict. No error was committed in the reception of this evidence. The bill of exception shows that it was received by the court only "for the purpose of illustrating a mechanical principle." Railway Co. v. United States, 191 Fed. 302, 112 C. C. A. 46.

[4] Nor did the court commit reversible error in permitting appellee to testify that

"in using the shaker bar he exercised care." On cross-examination he testified:

"I knew that it (the shaker bar) did not fit, and it had come off before with me. It had come off several times. I knew that it had come off from the viewpoint I had, by reason of its being worn and by reason of the fact that it did not fit over there snugly. That is the reason it came off—that it did not fit snugly. I did not know that."

He further testified that he knew it was defective, and did not report it because he did not think it was his duty to report it. And:

"In answer to one of Mr. Garrison's questions, I stated that the condition of this slot and stem was such that it was dangerous, and I continued to use it. The reason I continued to use it was, it was material given to me, and I thought that by exercising care I could prevent any accidents or anything; and I did exercise care by trying to use it."

Appellee was familiar with the use of the appliance in evidence before the jury, which he said was similar to the one he was using at the time he was hurt. The evidence shows that he was qualified to give his opinion with reference to the proper use of such an appliance. He stated in detail the manner in which he used the shaker bar at the time he was hurt. When the use of care is the issue before the jury, we recognize that the rule is that a witness should state only the facts and circumstances going to make up the issue and should not state his conclusion on these facts, yet when all the facts are before the jury, as in this case, the error in permitting appellee to testify that he used "care," should not reverse the case. Rule 62a (149 S. W. x).

We believe the case was correctly tried, and therefore affirm the judgment of the trial court.

Affirmed.