MARY RUTH YOUNG *v.* LOUIS P. PRICE AND
ALLEN L. SOUZA, INDIVIDUALLY AND DOING
BUSINESS AS PRICE CONCRETE TANK COMPANY,
AN HAWAIIAN CO-PARTNERSHIP.

No. 4531.

June 7, 1968.

RICHARDSON, C.J., MIZUHA, MARUMOTO,
ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY MIZUHA, J.

The plaintiff-appellant, Mary Ruth Young, was injured in 1958 when she fell over a garden hose stretched across the sidewalk. The defendants-appellees operated a construction company. One of their employees had attached the hose to a fire hydrant and stretched the hose across the sidewalk to private property. The plaintiff testified that she was carrying an open umbrella, tilted slightly forward, to protect her from the wind and rain. She also was carrying a ledger, 8" x 12" and ¾" thick, a bag of silver, and an airline bag. She testified that she was looking straight ahead and was walking at a moderate pace. Although her glasses had become steamed, she had not stopped to clean them. She further testified that she saw no one else on the street,

that she did not see the hose until after she had fallen, and that she did not see the hydrant or any warning devices.

Three workmen, including the one who said he placed them, testified that two warning cones, one with a red flag in it, were placed alongside the hose at the edges of the sidewalk. One testified that he saw the plaintiff approach the hose, lift her foot to step over it, and fall to the ground.

The plaintiff brought an action against the defendants alleging that the defendants, through their employees, failed to exercise reasonable care to protect pedestrians from the hazard they had created by stretching the hose across the sidewalk. At the first trial, the jury found for the plaintiff, but this court reversed and ordered entry of judgment for the defendants on the ground that the plaintiff was guilty of contributory negligence as a matter of law, 47 Haw. 309, 388 P.2d 203. On rehearing, the court modified the ruling by remanding the case for a new trial on the grounds that the question of contributory negligence was for the jury to decide and that introduction of evidence of plaintiff's ailments unrelated to the accident was prejudicial, 48 Haw. 22, 395 P.2d 365. At the second trial, the jury found for the defendants and the plaintiff appealed.[1]

The plaintiff alleges two errors. First, she alleges the trial court erred in admitting into evidence a cone and a flag similar to those the witnesses testified were at the scene of the accident. Second, she alleges the trial court erred in denying her requested Instruction No. 11. We find that both rulings were erroneous and reverse the judgment below.

The trial court erred in admitting into evidence alleged replicas of a yellow cone and a red flag which were purported to be at the scene of the accident. There was a definite conflict in testimony as to whether said objects were present or not, a dispute which goes to the very essence of liability. Defendants contend that the yellow cone and red flag were placed at the scene of the accident to warn pedestrians, but plaintiff maintains that she did

---

[1]We have handed down two additional opinions, affirming the trial court's denial of a motion to file an appeal in forma pauperis (unpublished) and striking a portion of the plaintiff's brief, 49 Haw. 314, 424 P.2d 107.

not see any warning devices near the scene of the accident. There is no admission by plaintiff of its existence. Where such conflict exists, the credibility of a witness' testimony is for the jury to decide, and the introduction of replicas of disputed evidence is prejudicial.

In the first trial of this case, see 47 Haw. 309, 388 P.2d 203; 47 Haw. 408, 390 P.2d 141, plaintiff was awarded a verdict of $37,500.00 general damages and $424.90 special damages, but the judgment was reversed because of error. This court stated:

> "* * * , 'there is no question that the presence of a hose on a sidewalk creates some risk or hazard to a pedestrian.' (pp. 314-315). From this it follows that the defendants were required to take steps commensurate with the danger created, to warn or protect pedestrians using the sidewalk. Whether defendants properly did so appears to me to have been clearly a question for the jury. Further, my present view is that the question of plaintiff's contributory negligence is so inextricably entwined with and dependent on the issue of defendants' negligence that it also was properly submitted to the jury. While the evidence on each issue still appears to me to predominate in favor of the defendants, I am now unwilling to say that reasonable men might not differ on the facts or the inferences which may be reasonably drawn from the facts and reach different conclusions in resolving the two issues. These questions are undoubtedly close ones. * * *" 48 Haw. 22, 25, 395 P.2d 365, 367.

In the first trial, replicas of the yellow cone and red flag were not admitted in evidence, and plaintiff won a jury verdict. In this second trial, the court admitted replicas of the yellow cone and red flag in evidence, which remained in full view of the jury until the verdict was returned for the defendant. The cone measured 11" square at the base, and stood 21" high, tapering to a circular top 2" in diameter. A 3½" strip at the base was black, the yellow portion was 15" high and the red portion of the top was 2½" wide. The red flag measuring 18" x 19" was attached to a pole 31" long. It stood like a flaming fireball in full view of the jurors throughout the trial.

The admission of replicas of the yellow cone and red flag precluded any doubt in the minds of the jury as to their existence. The presence of these physical objects in the courtroom with the blessing of the trial judge is in my opinion unquestionably prejudicial since this court in a previous opinion definitely and unequivocally stated:

"* * * , 'there is no question that the presence of a hose on a sidewalk creates some risk or hazard to a pedestrian.' (pp. 314-315) . *From this it follows that the defendants were required to take steps commensurate with the danger created, to warn or protect pedestrians using the sidewalk. Whether defendants properly did so appears to me to have been clearly a question for the jury.* * * *" (Emphasis added) 48 Haw. 22, 25, 395 P.2d 365, 367.

Admission of the replicas of the yellow cone and red flag in this case was tantamount to the court telling the jury that there was a yellow cone and red flag to warn pedestrians and therefore defendants took the necessary and proper precautions. The admission of the replicas of the yellow cone and red flag in this case cannot be compared to the drawing of a diagram by a witness or admission of a picture which was taken of the scene immediately after an accident occurred. Admission of prejudicial evidence cannot be "sloughed off" by limiting instructions. When there is a conflict in the testimony as to the presence of warning devices as in this case, the credibility of the witness is for the jury without an assist from the trial judge.

Appellee has not cited a case to support the proposition that demonstrative evidence may be admitted where there is a conflict in the evidence as to the existence of certain physical objects.

Authorities which admit demonstrative evidence are those cases where there is no conflict or dispute as to the existence of the particular object sought to be proven. There is an implication that demonstrative evidence must be based upon undisputed preliminary facts. *Sellew* v. *City of Middletown,* 121 Conn. 331, 185 A. 67; *Toole* v. *Franklin Inv. Co.,* 158 Wash. 696, 291 P. 1101; *Finch* v. *W. R. Roach Co.,* 295 Mich. 589, 295 N.W. 324.

In *Sellew* v. *City of Middletown, supra,* plaintiff brought an

action against the city for injuries sustained when she allegedly fell on a sidewalk. Plaintiff offered a pan of stones or pebbles in evidence which she testified were similar to those which were present on the sidewalk when she fell. There was no dispute as to the existence or non-existence of stones or pebbles. The court stated that plaintiff's testimony was sufficient to support the court's exercise of its discretion in admitting the stones in evidence for the purpose of illustrating to the jury the situation as it existed.

In *Toole* v. *Franklin Inv. Co., supra,* a tenant brought an action against her landlord to recover damages for injuries resulting from the collapse of a folding bed. The court, in reference to the admission in evidence of a folding bed without conclusive evidence that it was the identical bed which had collapsed, held it was properly admitted. Again, there was no dispute as to the existence or non-existence of a folding bed.

In *Finch* v. *W. R. Roach Co., supra,* the defendant owned an orchard and sold cherries at lower prices to those who did their own picking. Plaintiff elected to pick his own cherries and was provided a ladder by the defendant. While picking cherries on top of the ladder, plaintiff fell and sustained severe injuries. The suit was based upon the claim that defendant supplied plaintiff with an unsafe and defective ladder. A model of the ladder was admitted into evidence over the objections of the defendant to illustrate its defectiveness. The jury returned a verdict for plaintiff, but the trial court entered judgment for defendant notwithstanding the verdict on the ground that the model was secondary evidence. The court held that the model was inadmissible because plaintiff failed to account for the absence of the original or give notice to produce it, and that this was fatal to recovery. The appellate court reversed and held that there was no error in the use of the model which was not a facsimile in every detail. Neither plaintiff nor defendant contended that a ladder was not involved; hence there was no dispute as to the evidence sought to be proven. The undisputed preliminary fact was that a ladder had been used. Therefore, demonstrative evidence was properly admitted only on this basis.

In all three cases an established fact preceded the introduction of demonstrative evidence. The established fact in *Sellew* v. *City of Middletown, supra,* was that stones or pebbles had been present on the sidewalk when plaintiff fell. There was no dispute as to that fact. The established fact in *Toole* v. *Franklin Inv. Co., supra,* was that a folding bed had been used by plaintiff and in *Finch* v. *W. R. Roach Co., supra,* the established fact was that a ladder had been used by plaintiff to pick cherries. Again there was no conflict of a preliminary fact.

*Isaacs* v. *National Bank of Commerce of Seattle,* 50 Wash. 2d 548, 313 P.2d 684, a case involving a hose on the sidewalk, is not applicable to the facts of this case. The question before the court was whether the testimony of the plaintiff-pedestrian in identifying the hose on which he tripped was sufficient identification to be admitted into evidence. Plaintiff's testimony was as follows:

"Q. Did you see the same hose [exhibit No. 7] yesterday? A. I saw a hose I believe to be the same hose.

"Q. How long is the hose?   A. Fifty feet, or slightly more. * * *

"Q. Do you know whether or not the hose you saw the other day was the same hose? A. No, sir, I don't know absolutely. I believe it to be."

The court held that the identification of the hose by the plaintiff was sufficient to be admitted into evidence.

All of the other cases relied upon by appellee are not in point.

Although there are no case authorities on the exact question presented in the case at bar, Cady, *Objections to Demonstrative Evidence,* 32 Mo. L. R. 333, 346, focuses upon undue prejudice resulting from the misuse of demonstrative evidence:

"Even though proffered demonstrative evidence passes the test of verity with flying colors, still a large hurdle remains—judicial discretion. Even though an exhibit be perfectly accurate, the trial judge has discretion to exclude demonstrative evidence that may create undue prejudice in the minds of the tribunal—such 'sympathy,' 'distraction,' 'resentment,'

'repulsion,' or 'indignation' that overcomes the rational processes of the trier of fact . . . Wigmore compares criminal and civil cases and concludes that the risks of unfair prejudice are of greater frequency in personal injury cases and so implies that the trial court should exercise discretion to exclude more firmly in civil than in criminal cases. In any event, the court's discretion is to 'prevent abuse' of demonstrative evidence."

*See also,* Bunge, *Demonstrative Evidence—A Grandstand Play,* 42 Ill. Bar J. 72, and Milwid, *The Misuse of Demonstrative Evidence,* 28 Ins. Couns. J. 435.

The lower court also erred in refusing to give plaintiff's Instruction No. 11, which reads:

"As a general rule it is the duty of one who, in the lawful use of a sidewalk, creates a dangerous condition thereon or therein, to use reasonable care to warn pedestrians of its existence or to protect them against injury.

"There is no question that the presence of a hose on a sidewalk creates some risk or hazard to a pedestrian.

"From this it follows that the defendants were required to take steps commensurate with the danger created, to warn or protect pedestrians using the sidewalk."

This is a verbatim statement of the law of this case as written in two previous opinions, *Young* v. *Price,* 47 Haw. 309, 388 P.2d 203; 48 Haw. 22, 395 P.2d 365.

The first paragraph of plaintiff's Instruction No. 11 is a verbatim statement of the general rule which was clearly stated in *Young* v. *Price,* 47 Haw. 309, 314, 388 P.2d 203 (first case), and 48 Haw. 22, 395 P.2d 365 (second case).

In the first case, this court reversed a jury verdict for plaintiff on the ground that the trial court committed reversible error in failing to direct a verdict for the defendant at the close of all the evidence on the ground that plaintiff "[b]y failing to see—ahead of her on the sidewalk and in her direct line of vision—that which was obviously plainly in view, namely, the hose, cones and flag, ahead of her and in her direct line of sight, plaintiff failed to exercise ordinary care for her own safety, and was guilty of con-

tributory negligence as a matter of law." 47 Haw. 309, 322-323, 388 P.2d 203, 211-212.

The reversal which was based upon the contributory negligence of the plaintiff, specifically stated:

> "However, there is no question that the presence of a hose on a sidewalk creates some risk or hazard to a pedestrian.

> \* \* \* \* \*

> "Having created some risk to pedestrians, the defendants here were under a legal duty to exercise ordinary care in taking such precautions as might reasonably be necessary under the attendant circumstances to prevent injuries to pedestrians using the sidewalk in a lawful and proper manner." 47 Haw. 309, 314-315, 388 P.2d 203, 207-208.

After rehearing, this court set aside its decision in the first opinion that plaintiff was guilty of contributory negligence as a matter of law, but reversed because of other error. However, the court did clearly state in the second opinion:

> "As the court's opinion (first opinion) states, 'there is no question that the presence of a hose on a sidewalk creates some risk or hazard to a pedestrian.' (pp. 314-315). From this it follows that the defendants were required to take steps commensurate with the danger created, to warn or protect pedestrians using the sidewalk. Whether defendants properly did so appears to me to have been clearly a question for the jury.

> \* \* \* \* \*

> "In short, I now am in agreement with the conclusion of the dissenting justices that the trial court did not commit error in denying defendants' motions for a directed verdict." 48 Haw. 22, 25, 395 P.2d 365, 367.

The three quotations in plaintiff's Instruction No. 11 are clear and concise and correct statements of the law as to the facts which this court reviewed in the first two opinions. There is no change in the facts in this case. On the cited quotations, there is no disagreement between the first and the second opinions

even though the second .opinion overruled the first on the question of contributory negligence. It is difficult to see how the instruction can be construed that the trial court had made a factual finding that the risk created by the hose constituted a dangerous condition, or that it had in fact ruled that a dangerous condition existed. All it says is "[t]here is no question that the presence of a hose on a sidewalk creates some risk or hazard to a pedestrian." The first paragraph states the general rule as approved by this court in 47 Haw. 309, 388 P.2d 203, followed by clear statement on the risk and hazard created by a hose. Simple, clear cut statements of the law as expressed by this court cannot be construed into ridiculous assumptions to justify the refusal of an instruction.

Defendants contend that statements in plaintiff's requested Instruction No. 11 were fully covered by defendants' Instructions Nos. 10, 11 and 19 which were given by agreement. These were as follows:

"Defendants' Instruction No. 10

"Negligence is the doing of an act which a reasonably prudent person would not do, or the failure to do something which a reasonable prudent person would do, actuated by those considerations which ordinarily regulate the conduct of human affairs. Negligence is the failure to use ordinary care in the management of one's property or person.

"This definition of negligence applies irrespective of whose conduct is in question, whether it be the conduct of the defendants or of the plaintiff."

"Defendants' Instruction No. 11

"You are instructed that every person has the duty to exercise ordinary care for his or her own safety, according to the circumstances then present.

"Ordinary care is that care which persons of ordinary prudence exercise in the management of their own affairs and in order to avoid injury to themselves or to others."

"Defendants' Instruction No. 19

"Because the amount of care used by the ordinarily prudent person varies in proportion to the danger known to be involved in what is being done, it follows that, in the exercise of ordinary care, the amount of caution required will vary with the nature of what is being done and all the surrounding circumstances. To put it another way, as the danger that should reasonably be foreseen increases, so the amount of care required by law also increases."

Defendants' Instruction No. 10 defines "negligence," No. 11 defines "ordinary care," and No. 19 states that the amount of care varies in proportion to the degree of danger present. They are all general instructions. None of the instructions relates to the law of negligence with respect to a hose on a sidewalk, nor the specific duty of defendants to warn or protect pedestrians when a hose is placed across the sidewalk. Where instructions are asked which correctly state the law on any issue presented, it is error to refuse to give them unless the points are adequately covered by instructions given. It is generally considered error to refuse to give a requested instruction on a given point which is accurate and applicable though the point may have been unequivocally covered by a general instruction which was given. *Nawelo* v. *von Hamm-Young Co.,* 21 Haw. 644.

Defendants' Instructions Nos. 10, 11 and 19 did not adequately cover the issues presented by Plaintiff's Instruction No. 11. It did not state (1) that the presence of a hose on a sidewalk creates some risk or hazard to a pedestrian, and (2) that defendants who placed a hose on the sidewalk, were required to take steps commensurate with the danger created to warn or protect pedestrians using the sidewalk.

Reversed and remanded for a new trial.

*Helen B. Ryan* (*Ryan and Ryan* of counsel) for plaintiff-appellant.

*William L. Fleming* (*Smith, Wild, Beebe & Cades* of counsel) for defendants-appellees.

DISSENTING OPINION OF LEVINSON, J.
IN WHICH MARUMOTO, J. CONCURS.

I am unable to join in the court's decision because it is legally and logically erroneous and factually unsupportable. The implications of the majority opinion, particularly with respect to the admissibility of demonstrative evidence, constitutes a grave departure from long-recognized and soundly-based principles.

### Admission of the Cone and the Flag.

This court has long recognized that an objection to the admissibility of evidence must be made at trial and cannot be raised for the first time on appeal, *Kawamoto* v. *Yasutake*, 49 Haw. 42, 410 P.2d 976 (1966) ; *In re Goodfader*, 45 Haw. 317, 343, 367 P.2d 472, 487 (1961) ; *Lindeman* v. *Raynor*, 43 Haw. 299, 301 (1959). Such a rule is necessary to preserve the orderly administration of justice. The absence of such a rule would permit a party to sit idly by as evidence not properly admissible is received, await the decision, and then if not satisfied, raise an objection. Obviously, there would be no end to litigation in such circumstances. Furthermore, many such objections could be obviated during trial if the precise nature of the objection were to be stated. This court also has recognized that general objections are, in effect, no objections if there is some basis on which the evidence was properly admitted, *Choy* v. *Otaguro*, 32 Haw. 543, 554-55 (1932).

The majority opinion completely ignores these sound principles. At trial, the only objections the plaintiff raised to the admission of the cone and the flag are as follows:

> We'll object to it being offered in evidence unless it can be shown that this is the identical cone that was there. No foundation has been laid for its introduction into evidence at this point.
>
> If he can identify it as the particular cone he saw that day in that place, we'll have no objection, but otherwise we will object to it as not being evidentiary material.

The objection that there was no foundation was cured by testimony by the witness that he saw a cone at the scene of the ac-

-cident idéntical with the one offered into evidence and that there were no markings by which to identify the exact cone which he saw.

As for the objection that unless it was the same cone, it was not "evidentiary material", I can see no difference between that objection and the general objection that proffered evidence is irrelevant, incompetent and immaterial. Therefore, if there was any basis on which the evidence was admissible, the trial court properly overruled the objection. A fair reading of the record indicates that the cone and flag were offered as illustrative of the witness' testimony, no different from a witness drawing a picture on a blackboard, to make visually clear to the jury what his words may not as accurately describe.

The controversy that raged some years ago over the use of demonstrative evidence has been reduced to a case by case adjudication of the probative value of the particular evidence and its potential prejudice[1] with nearly conclusive weight being given to the determination of the trial court. McCormick, *Evidence* 386 (1954). The use of demonstrative evidence is not new. Indeed it has long been within the discretion of the trial court

> to sanction a departure from the ordinary or verbal medium and permit the witness to make clearer his own observed data by representing them in gesture, dumbshow, or other dramatic mode. . . .
>
> It would be folly to deny ourselves on the witness-stand those effective media of communication commonly employed at other times as a superior substitute for words. 3 Wigmore, *Evidence* §§ 789-90 (3d ed. 1940).

An object introduced as demonstrative evidence is "evidentiary material" where it is offered as illustrative of a witness' testimony and is a "reasonably exact reproduction or replica of the object

---

[1]*Compare* Belli, *Demonstrative Evidence,* 10 Wyo. L.J. 15 (1955) *with* Bunge, *Demonstrative Evidence—A Grandstand Play?,* 42 Ill. Bar J. 72 (1953) and Milwid, *The Misuse of Demonstrative Evidence,* 28 Ins. Couns. J. 435 (1961). As exemplified by this case, defense counsel have learned to use demonstrative evidence, *see Open Forum—Scientific Reconstruction of an Automobile Accident,* 25 Ins. Couns. J. 438 (1958) .

involved", *Alston* v. *Shriver,* 105 So. 2d 785 (Fla. 1958); *Smith* v. *Ohio Oil Co.,* 10 Ill. App. 2d 67, 134 N.E.2d 526 (1956) ; 3 Wigmore, *Evidence* § 790 (3d ed. 1940) .

Applying the law to the facts of this case, it is clear that the witness adequately "sponsored" the cone and the flag and that they were relevant to a material issue in the case.[2] Therefore, the appellant's only objection to the evidence appearing in the record was properly overruled.

On appeal, the plaintiff raises, and the majority accepts as a basis for reversal, a different objection from that raised at trial. Under the principles set out earlier, I think it is improper for the court to reverse on that ground. But I would affirm even if the ground raised on appeal were considered.

> Succinctly stated, defendants at [sic] the case at bar, by the introduction of the cone and the flag were attempting to prove the existence of a cone and a flag at the scene of the accident by showing that similar cones and flags, did exist. . . . By the stratagem of general resemblance, the Defendants succeeded in influencing the jury to believe in the existence of warning devices at the place and time of the accident. Brief for Appellant at 50-51.

The majority opinion goes beyond the limited objection raised on appeal in concluding that:

> The admission of replicas of the yellow cone and red flag *precluded any doubt* in the minds of the jury as to their existence. (emphasis added) .

This case does not involve the constitutional area of involuntary confessions where reversal for admission is automatic. The party arguing for reversal on the basis of prejudice has the heavy burden of proving that prejudice resulted from the admission of otherwise admissible evidence. The majority opinion's conclusory statements to the contrary notwithstanding, this the plaintiff failed to do.

The majority opinion effects a distinct and unwarranted

---

[2]Indeed, the majority contends they were all too relevant to a *very* material issue.

invasion into the province of the trial court. Virtually every case I have found involving demonstrative evidence begins with the basic premise that the admission of such evidence is within the sound discretion of the trial court. Its decision will not be reversed on the ground that the evidence was prejudicial unless it is so clear that the prejudice outweighs the probative value as to make admission an abuse of discretion. *See* Annot., 69 A.L.R.2d 424, 436-39 (1960).

I think the majority would agree that the real question to be determined is whether the prejudice outweighed the clearly recognized probative value. The commentator whom the majority quotes as supporting its finding of prejudice enumerates four ways in which demonstrative evidence might be prejudicial. It might be inflammatory, cumulative, gruesome, or indecent. Cady *Objections to Demonstrative Evidence,* 32 Mo. L. Rev. 333, 347-52 (1967). The prejudice the majority purports to find fits into none of these categories. There is absolutely no basis in decided cases in this or in any other American jurisdiction, as the majority recognizes, for its broad conclusion of prejudice.

The majority mistakenly contends that there is no authority to support the admission of demonstrative evidence where there is a conflict as to "preliminary facts," such as the existence of the object sought to be introduced. The cases the majority discusses as implying a "no-dispute" requirement provide less than a scintilla of support for its conclusion. Furthermore, there are numerous cases in which demonstrative evidence was admitted despite a conflict over the existence or nature of the original object.

In *Isaacs* v. *National Bank of Comm. of Seattle,* 50 Wash. 2d 548, 313 P.2d 684 (1957), the plaintiff sought damages for injuries resulting when he allegedly fell over a hose stretched across the sidewalk. The defendant's gardener testified that he was working at the bank on the day of the alleged accident but that he did not water the lawn and that the hose had not been used or attached that day. The trial court admitted into evidence a hose which the plaintiff could not identify as the exact hose that he testified was there on the day of the accident. The existence of

the hose in the *Isaacs* case, even more than the existence of the cone and flag in this case, "goes to the very essence of liability."

In *Murray* v. *Firemen's Ins. Co. of Newark*, 121 Ore. 165, 254 P. 817 (1927), the plaintiff brought an action to recover under an insurance contract for property allegedly destroyed by a fire. The defendant contended that the amount of the claim was fraudulently inflated. The trial court permitted the plaintiff to introduce duplicates of a lace cover and lace tablecloth allegedly destroyed in the fire. They were admitted for the purpose of establishing the value of the items allegedly destroyed. The defendant had no way of knowing whether such items ever existed. Furthermore, the defendant's liability to pay any damages would have been vitiated by the filing of a fraudulent claim. Therefore, the question of the value of the two items went "to the very essence of liability," as well as to another very basic question in the case, the amount of damages allegedly resulting from the fire.

In *Davis* v. *Callen*, 250 S.W. 305 (Tex. Civ. App. 1923), the plaintiff sued for damages resulting from an accident allegedly resulting from inadequate tools provided by the defendant. The trial court permitted the plaintiff to introduce into evidence a model of the tool he alleged the defendant provided although the defendant contended that plaintiff's model was not an accurate representation of the kind in use at the time of the accident. The court upheld introduction on the grounds that the plaintiff thereby illustrated the principle of the manner in which the tool functioned. Although there was no dispute as to the existence of *some* kind of tool, the determination of liability depended on precisely what kind of tool it was. On this issue, there was direct conflict.

In *Comer* v. *Thornton*, 86 S.W. 19 (Tex. Civ. App. 1905), the plaintiff brought an action to recover on a contract to construct a well. The defendant contended that the plaintiff failed to dig the well straight. The defendant's witness testified that the well was crooked and that the bottom of the well could not be seen. Over the defendant's objection, the plaintiff's witnesses were permitted to construct a cylinder which they testified was similar to the pipe laid down the well. One witness put a dent in

the side of the model to show that the well could have been, and indeed was, constructed straight without the bottom being visible. The appellate court rejected the defendant's objection that the model was "irrelevant and immaterial and calculated to mislead the jury."

> We think there was no error in permitting the witnesses to illustrate to the jury the character and appearance of the well, about which they were testifying by the use of the means adopted. 86 S.W. at 20.

Although there was no dispute about the existence of the hole in the ground, there was direct contradiction over the nature of the hole, whether straight or crooked, and this was the precise issue upon which the finding of liability or no liability had to be based.

These cases do not exhaust the list of courts which have refused to accept the spurious objection to the admission of demonstrative evidence upon which the majority mistakenly relies.

The majority's reasoning is no more compelling than its purported legal analysis. The majority concludes that the admission of the cone and the flag prevented the jury from making an independent determination as to the credibility of the witnesses; that the jury must have believed the workmen and disbelieved the plaintiff because of the admission of the cone and flag. As long as the trial court instructs the jury that it is the sole judge of the credibility of the witnesses, I fail to see the logic in the majority's conclusion. The cone and flag were merely illustrative of what the workman claimed he saw at the scene of the accident. As long as this fact is made clear to the jury, the only basis on which the majority's conclusion can be considered logically sound is that the jury is either so ignorant as to be unable to understand or is so contumacious as to disregard wilfully what it is told. Either of these explanations, if accepted generally, would require the abolition of the jury system.

I am further unable to make sense out of the majority's bald statement that:

The admission of replicas of the yellow cone and red flag *precluded any doubt* in the minds of the jury as to their existence. The presence of these physical objects in the courtroom with the *blessing of the trial judge* is in my opinion unquestionably prejudicial. . . .

Admission of the replicas of the yellow cone and red flag in this case was *tantamount to the court telling the jury* that there was a yellow cone and red flag to warn pedestrians and therefore defendants took the necessary and proper precautions. (emphasis added).

I see no justification for equating the admission of the cone and flag for the limited purpose of illustrating a witness' testimony with a binding instruction, as the majority impliedly does. The court placed no more "blessing" on the cone and flag than on any other exhibit which it, or any trial court, places when it admits an exhibit into evidence. Indeed, the trial court delayed admitting the cone and flag until it was made clear that there was no way of distinguishing between the cone and flag in court and the cone and flag the witness testified he saw at the scene of the accident and that they were in fact exactly alike. After these facts were established, the trial court overruled the plaintiff's objections without commenting on the value of the evidence as to the witness' credibility. To equate these actions of the trial court with an instruction to the jury that the objects were there and that the defendants therefore had discharged their duty of care is preposterous. The trial court's instructions to the jury made clear that the basic issue whether the defendants exercised reasonable care was for its determination.

The majority also eschews the value of limiting instructions *without any attempt to relate its conclusion to the facts of the case* or to well-recognized principles.

There is simply no precedent for the majority's conclusion that "Admission of prejudicial evidence cannot be 'sloughed off' by limiting instructions" in the context of this case. From *Kaleleonalani* v. *Smith,* 4 Haw. 82 (1878) to *Young* v. *Price,* 48 Haw. 22 (1964), this court has recognized that limiting instructions are the basic mode of eliminating error or preventing misuse of

properly admitted evidence.[3] As the court stated long ago:

> The jury is sworn to render verdict according to law, and, by our statute, must receive the law from the Court. When the Court has instructed that something which they have heard is not to be considered by them, we must presume in favor of their oath and public duty. It is true this presumption might be overcome by their rendering a verdict which had no evidence to support it but that which had been excluded by the Court. 4 Haw. at 86-87.

There are only two prior cases in this state that I have found where limiting instructions were held insufficient to cure an error in admission of evidence. In *Territory* v. *Corum,* 34 Haw. 167 (1937), the defendant's conviction for first degree murder and death sentence were overturned, in part, on the ground that certain evidence had been improperly admitted. A detective had been permitted to testify concerning an article he found in the defendant's home concerning an unrelated unsolved murder; a doctor was permitted to testify that the deceased did not have a suicidal disposition; and a friend of the deceased was permitted to testify that two and a half years prior to the death the deceased had told her she was afraid of firearms. The trial court ultimately instructed the jury to disregard these three items of evidence. This court held that the cumulative effect of all three items was prejudicial. The opinion does not provide a more detailed discussion of the prejudice but does emphasize the fact that the case involved the death penalty.

In this court's second decision in *Young* v. *Price,* the court remanded the case for a new trial, in part, on the ground that the plaintiff had been permitted to introduce evidence of ailments unconnected with the accident, 48 Haw. at 27-28. The court rejected the limiting instruction in that case for two reasons. First:

---

[3]Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. "A defendant is entitled to a fair trial but not a perfect one." *Lutwak* v. *United States,* 344 U.S. 604, 619. . . . Bruton v. United States, 88 S. Ct. 1620, 1627 (1968).

The testimony of the plaintiff respecting her heart attack and the two gall bladder operations was vividly told by her and was of such a nature that it could not help 'but have evoked sympathy in the mind of an ordinary person. *Supra.*

Second, counsel for the plaintiff elicited the testimony with the implied promise to tie the ailments up with the accident although there was no reasonable basis on which counsel could have anticipated connecting the testimony to the accident. Therefore, the court concluded:

The tactics of counsel cannot be condoned or overlooked. We feel compelled to state that, even if the incompetent testimony elicited from the plaintiff had been much less detrimental to defendants than it was, we would not, on the trial record of this case, allow the error to stand and thus set a precedent that might be taken as militating against the professional standard of candor which proscribes an attorney from getting evidence before a jury which he knows or should know the court should reject. 48 Haw. at 28, 395 P.2d at 369.

Finally, the majority opinion lacks any significant factual support for its many conclusory statements. It appears to find support for its conclusion that the admission of the cone and the flag was prejudicial on the facts that they were not admitted into evidence in the first trial and the plaintiff prevailed whereas they were admitted in the second trial and the plaintiff lost. The numerous differences between the two trials provide ample explanation for the difference in results.

The majority overlooks the fact that the cone and flag were marked for identification, were exhibited to the jury, and were left on counsel's table in the first trial. In cross-examining the workman, plaintiff's counsel queried:

The color of that cone over on that table on the other side of the courtroom, what color would you say that cone was from where you sit?

The cone and flag were exhibited in court on the fourth day of

the six-day first trial. In the second trial, they were introduced into evidence on the fourth day of the five-day trial. This court has no way of knowing how extensively they were used in the two trials. All that is clear is that they were present and used at both trials. The mere fact that they were introduced into evidence in one case and not in the other is insufficient to justify the conclusion that prejudice resulted from admission in the second trial.

Furthermore, the difference between the two trials was extensive. As I pointed out above, in the first trial the plaintiff was permitted to testify about a heart atack and two gall bladder operations which were totally unrelated to the accident in question. In the first trial, the plaintiff called five doctors and a physical therapist in addition to testifying herself. The defendants called only two witnesses, the workman and a tax assessor who testified solely on the issue of the plaintiff's tax returns. The workman's testimony was halting and on cross-examination he admitted certain inconsistencies between his testimony and prior statements. At the second trial, the plaintiff was her only witness. The defendant, on the other hand, presented not only the workman, but also two other workmen, one of whom testified that he actually placed the cones and the flag. The transcript of the first trial contained 632 pages, the bulk of it referring to the plaintiff's various ailments. The transcript of the second trial contained 263 pages.

There is ample basis, in comparing the two records, to conclude that the jury merely believed the defendants' witnesses and declined to believe the plaintiff in the second trial. Or, even if they believed the plaintiff, the jury concluded that she was contributorily negligent. Indeed, the first time the case was presented to this court, it ruled that the evidence in the first trial dictated a finding of contributory negligence as a matter of law. 47 Haw. 309, 388 P.2d 203 (1963). Although reversing that ruling, the justice who changed his mind wrote for the majority that

the evidence on each issue still appears to me to predominate in favor of the defendants. . . . 48 Haw. at 25, 395 P.2d at 367. The jury appears to have so concluded.

### Denial of Requested Instruction

I agree with the majority that it is error for the trial court to refuse to give an instruction which correctly states the law and which is not adequately covered by other instructions. *Kometani* v. *Heath*, 50 Haw. 89, 431 P.2d 931 (1967); *State* v. *Heirs of Kapahi*, 48 Haw. 101, 395 P.2d 932 (1964). I disagree with the majority's conclusion that it is error to refuse a requested instruction on a given point where it has been unequivocally covered by a general instruction. The majority's reliance on *Nawelo* v. *von Hamm-Young Co.*, 21 Haw. 644 (1913) for such a broad statement is misplaced. In that case, the trial judge rejected instructions offered by counsel both for the plaintiff and the defendant and gave a set of instructions of his own creation. The court held that the trial judge erred in refusing to give instructions requested by counsel on points which were not included in the judge's instructions. Incidental to that conclusion, the court made several general statements, two of which are set out as follows:

> [W]here instructions are asked which correctly state the law on any issue presented it is error to refuse them *unless the points are adequately covered by the instructions given*. 21 Haw. at 649. (emphasis added).
> The cases cited go to show that it is generally considered error to refuse to give a requested instruction on a given point which is accurate and applicable though the point may have been *inferentially* covered by a general instruction which was given. 21 Haw. at 650 (emphasis added).

I agree that specific instructions are preferable to general ones where the former may be given without undue prejudice or confusion. But the fact that more specific instructions are offered does not require the trial court to accept them and reject slightly more general instructions or give cumulative instructions on the same point. Defendants' Instruction 19 indicates to the jury that the amount of care which a person must exercise varies with the danger involved in the situation. I think this more than inferentially covers the question of the defendants' duty under the circumstances of this case.

Furthermore, I think the trial court had sufficient cause to believe that the plaintiff's instruction might be confusing. Combined into one instruction, the three quotations might be construed as indicating that the trial court had made a factual finding that the risk created by the hose constituted a dangerous condition. The trial court made no such finding, nor did this court make such a finding in the earlier decisions.

I would affirm.