# MARLENE K. BARRETTO, ET AL.
## *v.* STANLEY AKAU.

### No. 4792.

November 25, 1969.

RICHARDSON, C.J., ABE, LEVINSON, KOBAYASHI, JJ., AND
CIRCUIT JUDGE OGATA IN PLACE OF
MARUMOTO, J., DISQUALIFIED.

384

This case comes to us on appeal from a judgment of $38,762.50 for plaintiff Marlene Barretto, a 16-year-old girl at the time of the accident, and $1,000 in favor of her parents, plaintiffs Manuel and Winifred Barretto. The suit was the result of an auto accident on October 3, 1965 in which the defendant, Stanley Akau, caused a head-on collision with another car while driving the car of Gerald Ito in which both Ito and plaintiff Marlene were also riding. The defendant admits negligence. The only issues at trial were the extent of damages to be awarded to Marlene, the expenses incurred by her parents, and the affirmative defenses of assumption of risk and contributory negligence.

On the day of the accident, Gerald Ito and the defendant had been drinking in various bars in Kapaa on the

island of Kauai from about noon until just before the accident at 4:30 p.m. They proceeded from the last bar to Marlene's home with Ito driving. Ito backed up a long driveway to the Barretto house, parked at the garage, and went in through the adjacent kitchen door to ask Mrs. Barretto's permission to take Marlene out for some ice cream. Permission was granted and the defendant slid over in the seat and drove until the time of the accident.

Marlene was married to Gerald Ito on April 22, 1966, over six months after the accident. She gave birth to a child on September 10, 1966, less than six months from the time of her marriage. No evidence was adduced as to whether the pregnancy was other than a normal one of approximately 280 days or nine calendar months.

The damages claimed at trial were numerous. Testimony was introduced that Marlene suffered amnesia, a cut chin, a bruised breast, a cut on the left thigh, a sore jaw, chipped teeth, and a mild cerebral concussion. At trial it developed that a major emphasis was being placed on emotional damages allegedly resulting from the crash and the injuries. The plaintiffs introduced testimony that before the accident Marlene was a lively girl who hiked, swam, caught frogs, fished, bowled, played the piano, and sang in the church choir, and that after the accident she became dependent, uninterested in her previous activities, reserved in her contacts with others, irritable, forgetful and unable to care properly for her child. Considerable expert medical testimony was introduced to prove these damages and to establish the accident as their cause.

While defendant alleges 27 different specifications of error in his brief, we find it necessary to address ourselves to only four in particular. First, the defendant alleges as error the refusal of the trial judge to allow two of Marlene's medical experts, Doctors Goebert and Popper, to answer a line of hypothetical questioning posed by the

defendant on cross-examination relating to the effect which a pre-marital pregnancy might have had on Marlene. This was to determine, by way of rebuttal, whether a pre-marital pregnancy could have precipitated a severe emotional crisis and brought about a personality change. An objection to the questioning was sustained because the fact of pre-marital pregnancy, assumed in the hypothetical question by defendant, was not yet in evidence.

Second, at the close of the trial the judge granted a motion for a directed verdict for the plaintiffs on the issues of assumption of risk and contributory negligence. On appeal the defendant has argued only the issue of assumption of risk. The factual issue was whether Marlene actually knew that the defendant had been drinking. She had no opportunity, except at a distance, to observe him before she got into the car, nor had she ever met him. Whatever she observed upon getting into the car and riding with the defendant was lost to the jury by a claim of amnesia covering those events. Mrs. Barretto did have an opportunity to observe firsthand Mr. Ito, who is not a party to this suit, when he came to pick up Marlene.

The defendant attempted to elicit testimony from Mrs. Barretto and from Marlene that Mrs. Barretto told Marlene in the hospital room after the accident that the boys were *obviously* drunk. Mrs. Barretto maintained that her information came from the police report. The defendant offered the report to show that no mention was made of the intoxication of the boys in it except for a statement that they had been drinking. This left an inference of firsthand knowledge as a basis for Mrs. Barretto's statement that the boys were obviously drunk. This in turn could mean that Marlene had that same opportunity to observe the boys' condition. The defendant's case rested, as it had to, on circumstantial evidence and inference.

The trial court chose to strike the admission of the police report as hearsay.

Third, over the defendant's objection Marlene's attorney was permitted to make a formula argument to the jury in order to illustrate how damages might be computed.

> Now we come to the disfigurement. The ordinary person is awake around 16 hours a day. Marlene Barretto walks around with that scar on her face, that lump in her mouth, and that scar, those two scars on her face, one of which is swollen, all day long; and naturally she is conscious of it. If for the 2½ years that have gone by since this accident, you awarded her the mere sum of 50 cents an hour for that embarrassment... [Objection overruled.]

The defendant contends that the statutory authority upon which Marlene's attorney relies, HRS § 635-52,[1] is an unconstitutional legislative incursion into the judicial function and thereby violates the principle of separation of powers embodied in the State Constitution. *See* Hawaii Constitution, art. III, § 1; art. IV, § 1; art. V, § 1.

Fourth, the defendant also specifies as error the inclusion in the instructions to the jury of eleven separate instructions on damages. He contends that by being repetitious the instructions unduly over-emphasized the subject of damages.

We reverse and remand for a new trial.

---

[1] HRS § 635-52 in pertinent part provides:

. . . .

In all actions for damages for personal injuries or death the parties or their counsel shall be entitled to argue the extent of damages claimed or disputed in terms of suggested formulas for the computation of damages or by way of other illustration, and shall be entitled to state in argument the amount of damages the party believes appropriate.

## I. CROSS-EXAMINATION OF PLAINTIFF'S MEDICAL EXPERTS.

We agree with the defendant's contention that in the cross-examination of an expert witness there is no requirement that hypothetical questions be based upon facts already in evidence. While the authorities are divided on this issue, we think that in cross-examining an expert witness a question aimed at demonstrating an alternative theory or contesting a substantive element of the case may be based on (1) those facts already in evidence, (2) those facts which are the proper subject of judicial notice, and (3) those facts which the cross-examiner in good faith anticipates he will establish later in the trial. If the cross-examiner fails to prove the facts assumed in his hypothetical question, then a motion to strike by opposing counsel is appropriate to cure the defect. *Peterson* v. *Schlottman,* 237 Ore. 484, 392 P.2d 262 (1964); *see also* H.R.C.P. Rule 7(b)(1) and *Trask* v. *Kam,* 44 Haw. 10, 18, 352 P.2d 320, 325 (1959).

While it has never been questioned in Hawaii, the use of the hypothetical question has been critically regarded by many authorities as a necessary evil. 2 Wigmore, *Evidence* § 686 (3d ed. 1940); McCormick, *Evidence* § 16 (1954); McCoid, *Opinion Evidence and Expert Witnesses,* 2 U.C.L.A. L. Rev. 356, 364-66 (1955). Judge Learned Hand referred to it as "the most horrific and grotesque wen upon the fair face of justice."[2] The Uniform Rules of Evidence, the Model Code of Evidence, the proposed Federal Rules of Evidence and various state rules provide that a question calling for the opinion of an expert witness shall be permitted although not hypothetical in form un-

---

[2] L. Hand, N.Y. Bar Association Lectures on Legal Topics 1921-22, cited in McCormick, Evidence at 34 n. 3 (1954).

less the trial judge, in his discretion, requires it to be in such form.[3]

The major criticism of the use of the hypothetical question is that the expert's mouth is often clamped by the examiner's selection of the assumptions used in his question, strategically omitting those assumptions which could harm his case. The jury is consequently confused and misled as to what the expert's opinion really is. 2 Wigmore, *Evidence,* § 686 at 812 (3d ed. 1940). These problems can be partially remedied by an unrestricted and intensive cross-examination of the expert.

On cross-examination the purpose of the hypothetical question determines what facts can be assumed in it. Cross-examination has been allowed to test the skill and accuracy of the expert by assuming facts which need never be proved. Such questioning is simply to determine the credibility of the expert. *Stafford* v. *Lyon,* 413 S.W.2d 495, 499 (Mo. 1967); 2 Wigmore § 684 (3d ed. 1940). But, where facts not yet proved are used in the form of a hypothetical question to demonstrate alternative theories or contest a substantive element as in the present case, the examiner must in good faith assure the court and opposing counsel that these facts will be developed later in the record. To require the cross-examiner to stick to the facts which the plaintiff has adduced would often deprive the cross-examiner of the benefits of cross-examination and compound the defects of the hypothetical question.

The rule has been aptly stated by the Washington Supreme Court in *Levine* v. *Barry,* 114 Wash. 623, 628, 195 P. 1003, 1005 (1921):

---

[3] Uniform Rules of Evidence, Rule 58 (1953); Model Code of Evidence, Rule 409 (1942); Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 7-05 (1969); New Jersey Evidence Rules 58 (1965); 7B N.Y.C.P.L.R. Rule 4515 (McKinney, 1963).

It is our view that the cross-examiner may rightfully propound hypothetical questions based entirely on conjectural facts for the purpose of testing the skill and knowledge of the witness, and, where he has not had an opportunity to present his proof as to the facts, his hypothetical question may be based on his contention of what the facts will be as they may be developed later by his testimony, for the purpose of throwing light on the facts as they may ultimately be submitted to the jury.

The present case demonstrates the need for this type of questioning. The trial took place on Kauai, an island approximately 100 miles by airplane from the medical experts' offices in Honolulu. The doctors were not easily available for recall by the defendant. The orderly progress of the trial and the search for a just resolution of the issues required the defendant's questions to be put to Marlene's experts at the time of cross-examination.

The plaintiffs contend that the defendant failed to prove that Marlene was actually pregnant before marriage and knew of her condition. Since the objection to the defendant's questions asked of Marlene's experts on cross-examination was sustained, there was no need subsequently to prove the pregnancy and knowledge thereof. Nevertheless, we are satisfied that enough circumstantial evidence was introduced by the defendant to show that Marlene knew she was pregnant before marriage. Combined with the proof is the common notoriety of the fact that most pregnancies are of approximately 280 days duration. *See* 9 Wigmore, *Evidence* §§ 2571, 2583 (3d ed. 1940). From the fact of a normal pregnancy it can reasonably be inferred that Marlene knew of her condition. Although the evidence demonstrates that a "bufo" test was negative, Marlene knew she missed her menses in January and February of 1966, at least two months prior

to her marriage in April, and had an enlarged uterus diagnosed in February. If she wasn't positive that she was pregnant, the record indicates that she was at least concerned about the possibility.

The plaintiffs cite *Cozine v. Hawaiian Catamaran, Ltd.,* 49 Haw. 77, 106, 412 P.2d 669, 687 (1966) as controlling this situation. That case held that on direct examination a non-treating medical expert cannot base his opinion on a plaintiff's out-of-court statements as to the plaintiff's condition, *not shown to be the same as indicated by the evidence in the record.* In the present case, since the defendant's cross-examination of a plaintiff's expert witness was involved, there was no opportunity for the defendant to have introduced his evidence into the record prior to the time when the question was asked. The necessary evidence could have been introduced into the record by the defendant at a later time when he was presenting his case. If such evidence were admitted at that later time, then the policy behind the rule in *Cozine* would be satisfied. Otherwise a motion to strike the portion of the witness' testimony which was violative of *Cozine* would be justified.

## II. DIRECTED VERDICT ON ASSUMPTION OF RISK.

### A. *Admissibility of the Police Report.*

The police report was not offered by the defendant to prove the truth of its contents but to show that it did not contain the information which Mrs. Barretto said it contained. Therefore, it was not vulnerable to the hearsay objection. As Wigmore has said: "[w]here the *utterance of specific words* is itself *a part of the details of the issue under the substantive law and the pleadings,* their utterance may be proved without violation of the Hearsay rule, because they are not offered to evidence the truth of the

matter that may be asserted therein." 6 Wigmore on *Evidence* § 1770 at 185 (3d ed. 1940); *see Territory* v. *Williams,* 41 Haw. 348, 352-53 (1956); *People* v. *Jones,* 293 Mich. 409, 292 N.W. 350 (1940).

The defendant wanted the police report admitted to show that Mrs. Barretto could not have gained the information concerning the boys' intoxicated condition from it. This omission gave rise to an inference of firsthand knowledge as a source of this information. Since Marlene and Mrs. Barretto had at least equal opportunities to view the defendant and Ito, with Marlene actually getting into the car next to the defendant, the argument of assumption of risk would have been bolstered by the admission of the police report.

### B. *Circumstantial Evidence of Actual Knowledge of the Risk Involved.*

The plaintiffs argue that Mrs. Barretto did not speak to or see the defendant and that, therefore, she could not have known firsthand that the defendant was obviously drunk. The defendant stayed in the car while Ito went to the kitchen door to get Marlene. It is not clear from the record whether Mrs. Barretto could see more than the back of the defendant's head, nor is it clear how close the car was to the kitchen door. Nevertheless, this court has consistently applied the rule that:

> [O]n motions for a directed verdict, the evidence and the inferences which may be fairly drawn from the evidence must be considered in the light most favorable to the party against whom the motion is directed and if the evidence and inferences viewed in that manner are of such a character that reasonable persons in the exercise of fair and impartial judgment may reach different conclusions upon the crucial issue, then the motion should be denied and the issue should be sub-

mitted to the jury. *Young* v. *Price*, 48 Haw. 22, 24, 395 P.2d 365, 367 (1965), quoting with approval from *Young* v. *Price*, 47 Haw. 309, 313, 388 P.2d 203, 206 (1963).

*See also, Collins* v. *Shishido*, 48 Haw. 411, 405 P.2d 323 (1965); *Kealoha* v. *Tanaka*, 45 Haw. 457, 370 P.2d 468 (1962).

Because of the admissibility of the police report, together with Mrs. Barretto's statement that the boys were obviously drunk, the evidence that the defendant and Ito had been drinking heavily, and the fact that Marlene got into the car where she could more closely observe the defendant, an inference by the jury of Marlene's actual knowledge of the defendant's condition was possible. We think that there was enough evidence to support a jury instruction on assumption of risk and that the trial court erred in directing a verdict on that issue. Actual knowledge of the risk involved may be established by circumstantial evidence. *Christensen* v. *Malkin*, 236 Cal. App. 2d 114, 45 Cal. Rptr. 836, 839 (1965). Indeed, because of Marlene's amnesia, circumstantial evidence was the only way to prove actual knowledge.

## III. THE FORMULA OR TIME-UNIT ARGUMENT TO THE JURY.

However, meritorious the defendant's contention that the legislature has encroached upon judicial terrain may be, we do not reach that constitutional issue in this case. Upon careful reconsideration of *Franco* v. *Fujimoto*, 47 Haw. 408, 390 P.2d 740 (1964), we choose to overrule that part of the opinion which prohibited the use of formula arguments to the jury.

There is obviously no market place for pain or suffering, so no objective standard can be used to aid the jury in

determining damages. The usual test is rather simplistic and amorphous. Pain and suffering are measured by "what the jury considers will reasonably compensate the plaintiff for the pain and suffering or anguish in light of the intensity and extent thereof as disclosed by the evidence...." *Franco* v. *Fujimoto,* 47 Haw. 408, 424, 390 P.2d 740, 750 (1964).

However artfully the objections to the use of formula damages are phrased, since the case goes to the jury, at bottom it might be said that the question turns on the court's confidence in the ability of a juror to parse the testimony and determine for himself what is true or untrue, exaggerated or reasonable with respect to damages for pain and suffering. In our view the reconciliation and weighing of conflicting testimony is indeed in the jury's domain. The dearth of standards by which to measure individual pain and suffering, the common sense of jurors, and the presence of alternative judicial safeguards that are less intrusive into the juror's province lead us to approve the use of formula arguments by counsel.

With proper guidance by the trial judge the objections advanced in *Franco* can be avoided and formula arguments can be usefully made by both sides. The trial judge should make it clear that the formula is just that, *argument,* and no more. *Olsen* v. *Preferred Risk Mutual Insurance Co.,* 11 Utah 2d 23, 354 P.2d 575 (1960). He should emphasize that it is part of counsel's function as an advocate to persuade the jury and that formulas are but illustrations which serve only to focus the inquiry on the issue which the jury must ultimately resolve, the extent of money damages. *Baron Tube Co.* v. *Transport Insurance Co.,* 365 F.2d 858, 861-62 (1966) ; *Edwards* v. *Lawton,* 244 S.C. 276, 136 S.E.2d 708 (1964).

Although certainly not essential to this case, it is reassuring to note that since *Franco* previously uncommitted

states have joined the growing majority which allow formula arguments.[4]

## IV. REPETITIOUS INSTRUCTIONS.

The trial judge gave six instructions requested by the plaintiff on the general law of damages[5] and five specific

---

[4] Beagle v. Vasold, 65 Cal. 2d 166, 53 Cal. Rptr. 129, 417 P.2d 673 (1966) (full discussion of current decisions and literature).

[5] *Plaintinff's Requested Instruction No. 2, given.*

You are instructed to return a verdict for each of the plaintiffs and against the defendant in such amount that you find each plaintiff was damaged as a proximate result of the accident. A form of verdict will be supplied you for this purpose.

*Plaintiff's Requested Instruction No. 17, given.*

Damages must be reasonable. You may award plaintiffs only such damages as will fairly and reasonably compensate them for the injuries or damages which you find, from a preponderance of all the evidence in the case, they have sustained as a proximate result of the accident.

You are not permitted to award speculative damages. This means you are not to include in any verdict compensation for prospective loss which, although possible, is wholly remote or conjectural.

*Plantiff's Requested Instruction No. 18, given.*

In this case the defendant has admitted that he was negligent and that such negligence caused the accident in question. In considering the damages suffered by the plaintiffs, you are to decide what damages were proximately caused by the accident, and the amount thereof.

Plaintiff Marlene K. Barretto claims general damages for the injuries which she claims she sustained and the disabilities which she claims proximately resulted from the accident.

Plaintiffs Manuel F. Barretto and Winifred Barretto claim as special damages for themselves and on behalf of Marlene Barretto Ito the past and future medical and hospital bills and other expenses which they have incurred or will incur.

*Plaintiff's Requested Instruction No. 20, given.*

You are instructed that the defendant is legally responsible for all of the injuries to the plaintiffs which he proximately caused, whether those injuries were new ones caused by this accident, or whether they were due to an aggravation of a pre-existing condition.

*Plaintiff's Requested Instruction No. 21, given.*

The plaintiff, Marlene K. Barretto, alleges that she has suffered and will suffer pain as a direct and proximate result of the accident of October 3, 1965. You may consider the matter of general damages, suffered by said plaintiff, if you find from the evidence that Marlene K. Barretto did sustain such damages. There is no approved standard by which such damages can be measured, except by the enlightened consciences of impartial jurors. You should look to the evidence and determine the degree of pain said plaintiff suffered, if any, and whether it will continue in the future and then, you should

instructions requested by the plaintiff separately detailing the damages in issue including amnesia, plastic surgery, mandibular displacement, concussion and contusion, and chipped teeth.[6] All of the instructions but two were objected to.

---

give plaintiff such sum as you think would be fair compensation for such pain.

*Plaintiff's Requested Instruction No. 22, given.*

The law does not require the plaintiff Marlene Barretto Ito to present any direct evidence to show the amount of money that would compensate her for pain, suffering, mental anguish and physical injuries sustained.

All that is necessary is to show the jury the extent of the injuries suffered, and then it is for the jury to determine in the manner indicated the damages to be awarded in connection with the same, if any.

6 *Plaintiff's Requested Instruction No. 25, given.*

If you find from the evidence that as a proximate result of the October 3, 1965 accident, plaintiff Marlene K. Barretto sustained a condition known as "amnesia," that is, a loss of memory, then you may award damages for such condition. In awarding damages, if such damages are to be awarded, you should consider the evidence if there has been any, relative to:

(1) Plaintiff's previous physical condition;
(2) The duration of the condition; and
(3) The effect, if any, on plaintiff's personality and disposition.

*Plaintiff's Requested Instruction No. 27, given.*

If you find from the evidence that plaintiff Marlene K. Barretto sustained disfiguring scars as a direct and proximate result of the occurrence in question, then you are instructed that a proper item of damage is the expense of plastic surgery. You may consider the probable success of such surgery, as shown by the evidence; you may further consider the time consumed in convalescing, if any, as shown by the evidence, and you may consider any other elements in evidence which you find to be material.

*Plaintiff's Requested Instruction No. 28, given.*

If you find from the evidence that as a proximate result of the occurrence in question plaintiff Marlene K. Barretto sustained an injury resulting in a mandibular displacement, or an injury that aggravated a mandibular displacement, a mandibular displacement meaning a displaced jaw, then you may consider the evidence, if any, which has been heard by you relative to:

(1) the disfigurement, if any, resulting from the injuries;
(2) the effect of the displacement, if any there is, on plaintiff's eating, chewing, talking, etc.; and
(3) the pain and suffering resulting from the injury, if any.

*Plaintiff's Requested Instruction No. 29, given.*

The plaintiff, Marlene K. Barretto, alleges that she sustained a concussion or contusion of the brain at the time of the occurrence in question. If you find from the evidence that there was a con-

We feel that on retrial an effort should be made to reduce the number of instructions dealing with the general law of damages. In *Johnson* v. *Tsukahara,* 51 Haw. 28, 33, 448 P.2d 822, 825 (1968) this court said that "[r]epetition of the same proposition in several instructions is generally a matter within the sound discretion of the trial court and is not reversible error." In this case we are faced with the task of putting some flesh on the bones of judicial "discretion" in this area. The reason for limiting repetitious instructions is not, as the defendant contends, that the issue of damages will otherwise be overemphasized. Damages were the principal issue in this case. The vice to be controlled here is the misleading of the jury resulting from the cumulative effect of repetitious instructions, however relevant and correct, because of the great respect the jury has for the judge and his views. *Orlando* v. *Northcutt,* 103 Arizona 298, 303, 441 P.2d 58, 63 (1968).

The mere numerical redundancy of instructions is not the operative test for prejudice. Each case must be considered separately and in light of its own facts, keeping in

---

cussion or contusion proximately resulting from the occurrence in question, you may consider, in assessing damages:

(1) the extent of the concussion or contusion;

(2) the pain and suffering resulting therefrom;

(3) the duration of such pain and suffering, if any;

(4) the effect, if any, thereof on Marlene K. Barretto's personality and behavior;

(5) the duration of such personality change, if any there was; and

(6) the nature of any treatment rendered or to be rendered in the future, if any, and the expense of same.

*Plaintiff's Requested Instruction No. 32, given.*

If you find from the evidence that the plaintiff suffered some chipped teeth as a direct and proximate result of the accident, in assessing damages you are instructed that the elements for you to consider are the following:

(1) The pain and suffering, if any, experienced by the plaintiff as a result of the occurrence; and

(2) The humiliation or other embarrassment occasioned by the plaintiff as a result of such injury.

mind the point that a fair and complete single instruction on each issue is most desirable. Based on that rule the trial court did not abuse its discretion in giving separate instructions with respect to the separate injuries to Marlene. She was entitled to separate consideration as to each of these injuries, any one of which might have supported an action for damages, although it would have been preferable to combine the instructions and eliminate repetition wherever possible.

On the other hand, the instructions dealing with the general law of damages told the jury in varying degrees of detail and in different language six times that they were to compensate plaintiffs for all damages which were the direct and proximate result of the accident. Beyond informing the jury of the law of damages, in our view, the multiple instructions came precariously close to upsetting the climate of reason which must prevail in a jury trial and gave the outward impression that perhaps the trial judge had formed an opinion in this case as to the preferred result. For that reason, on retrial such instructions should be corrected to give the jury fewer and yet comprehensive instructions on the general law of damages.

We are aware of opinions by this court stating that it is error for the trial court to refuse to give an instruction which correctly states the law and which is not *adequately* covered by other instructions. *Kometani* v. *Heath,* 50 Haw. 89, 98, 431 P.2d 931, 938 (1967) ; *State* v. *Heirs of Kapahi,* 48 Haw. 101, 108, 395 P.2d 932, 937 (1964). Further, in *Young* v. *Price,* 50 Haw. 430, 439, 442 P.2d 67, 73 (1968) this court stated that "[i]t is generally considered error to refuse to give a requested instruction on a *given point* which is accurate and applicable though the point may have been unequivocally covered by a *general instruction.*" (Emphasis added.)

While these cases can be viewed as generating some pressure on the trial judge to be generous with the instructions given in order to avoid reversal, the instant case approaches the other end of the spectrum where cumulative instructions become prejudicial. The cautionary statement of the dissent in *Young* v. *Price* would appear to be applicable here. "[T]he fact that more specific instructions are offered does not require the trial court to accept them and reject slightly more general instructions *or give cumulative instructions on the same point. Young* v. *Price,* 50 Haw. 430, 450, 442 P.2d 67, 79 (1968) (Levinson and Marumoto, JJ. dissenting) (emphasis added).

We do not want a trial judge to feel whipsawed by the obligation to give sufficient instructions and the opposing requirement not to give cumulative instructions. There is surely plenty of room between instructions which are insufficient and instructions which are cumulative for the trial judge to perform comfortably his function of adequately informing the jury of the relevant law. If any policy is to be preferred, it is that of allowing adequate and thorough instructions to be given. Only in the rarest of cases will cumulative instructions be the basis for a new trial.

Reversed and remanded for a new trial.

*Richard E. Stifel* (*Jenks, Kidwell, Goodsill & Anderson* of counsel) for defendant-appellant.

*Frank D. Padgett* (*Padgett, Greeley, Marumoto & Akinaka* of counsel) for plaintiffs-appellees.