FLORENCE GREENE, as Administratrix of the Estate of MICHAEL T. GREENE, Plaintiff-Appellant, *v.* JOHN TEXEIRA and MAXINE TEXEIRA, Defendants-Appellees

No. 5082

January 23, 1973

Richardson, C.J., Abe, Levinson, Kobayashi, JJ., and Circuit Judge Chang in Place of Marumoto, J., Disqualified

OPINION OF THE COURT BY RICHARDSON, C.J.

This appeal arises out of consolidated actions brought by Florence Greene, the appellant herein, in her individual capacity and as administratrix of the estate of her son, Michael T. Greene, against John and Maxine Texeira, parents of Ronald Texeira, a minor,[1] pursuant to HRS §§ 663-3[2] and 663-7.[3] The claims were the result of an automobile accident involving a single vehicle driven by Ronald Texeira. Michael T. Greene, a passenger in the car, sustained injuries from which he died, following 45 days of hospitalization. Michael was 19

[1] See HRS §§ 286-112 and 577-3.

[2] HRS § 663-3 provides:

*Death by wrongful act.* When the death of a person is caused by the wrongful act, neglect, or default of any person or corporation, the deceased's legal representative, or any of the persons hereinafter enumerated, may maintain an action against the person or corporation causing the death or against the person or corporation responsible for the death, on behalf of the persons hereinafter enumerated.

In any action under this section, such damages may be given as under the circumstances shall be deemed fair and just compensation, with reference to the pecuniary injury and loss of love and affection, including (1) loss of society, companionship, comfort, consortium, or protection, (2) loss of marital care, attention, advice, or counsel, (3) loss of filial care or attention or (4) loss of parental care, training, guidance, or education suffered as a result of the death of the person by the surviving spouse, children, father, mother, and by any person wholly or partly dependent upon the deceased person. The jury or court sitting without jury shall allocate the damages to the persons entitled thereto in its verdict or judgment, and any damage recovered under this section, except for reasonable expenses of last illness and burial, shall not constitute a part of the estate of the deceased. If an action is brought pursuant to this section and a separate action brought pursuant to section 663-7, such actions may be consolidated for trial on the motion of any interested party, and a separate verdict, report, or decision may be rendered as to each right of action. Any action brought under this section shall be commenced within two years from the date of death of the injured person.

[3] HRS § 663-7 provides:

*Survival of actions.* A cause of action arising out of a wrongful act, neglect, or default, except actions for defamation and malicious prosecution, shall not abate by reason of the death of the injured person. The action shall survive in favor of the legal representative of the person and any damage recovered shall form part of the estate of the deceased.

years of age, unmarried, and a college freshman at the time of his death.

On April 27, 1970, verdicts were returned. The jury awarded the mother $30,000 under the Wrongful Death Act, HRS § 663-3, and $5,000 under the Survival Statute, HRS § 663-7. Judgment was entered in accordance with the verdicts on April 30, 1970. The Wrongful Death Act judgment was satisfied, but the administratrix appealed from the judgment under the Survival Statute.

The appellant alleges four specifications of error on appeal: (1) that the circuit court (a) erroneously permitted the introduction of evidence relating to the effect of federal and state income taxes upon the probable net excess earnings of the decedent, and (b) erroneously instructed the jury that these taxes were to be deducted from the present value of such earnings; (2) that the circuit court erroneously permitted the introduction of evidence concerning the cost of supporting a hypothetical wife and two hypothetical children and allowed the jury to deduct this amount from its award of probable net excess earnings; (3) that the circuit court improperly permitted the appellees to pose hypothetical questions to a witness based on the assumption that the present value of decedent's probable excess earnings should be determined on the basis of a 6% discount factor; and, (4) that the circuit court erred in refusing certain jury instructions concerning injuries which the decedent allegedly suffered as a result of the automobile accident.

The first three specifications of error alleged by the appellant concern the probable future earnings of the decedent, in excess of the probable cost of his own maintenance and the provision he would have made for his family and dependents during the time he would likely have lived but for the accident. That such earnings are a proper item of damages in an action under HRS § 663-7 was determined by this court in *Rohlfing* v. *Akiona*, 45 Haw. 373, 369 P.2d 96 (1961).

Following the submission of briefs and oral argument, the court began to reconsider the merits of the *Rohlfing* interpretation of § 663-7. On September 6, 1972, additional briefs were requested of counsel on both sides, directed to the question whether HRS § 663-7 or any other section of the Hawaii Revised Statutes, or the common law of Hawaii as defined in HRS § 1-1, provides a right to recovery in favor of an estate for damages based on the probable net excess earnings of a decedent projected beyond the date of his death, special consideration being given to whether *Rohlfing* v. *Akiona* should be overruled. Simultaneous reply briefs were thereafter requested and submitted, directed to the same issues.

Much deliberation and thorough consideration of this issue have led us to conclude that the probable future excess earnings of a decedent are not a proper item for damages under the Hawaii Survival Statute, HRS § 663-7. Insofar as *Rohlfing* v. *Akiona, supra,* conflicts with this determination it is hereby overruled.

A preliminary question on this appeal is whether it is proper for this court to consider an issue raised for the first time on the court's own motion, subsequent to submission of briefs and oral argument. We feel that in the circumstances of this case such a procedure is proper.

Rule 3 (b) (3) of the Rules of the Supreme Court provides that the opening brief shall contain a "short and concise statement of . . . questions presented for decision," and further that "[q]uestions not presented . . . will be disregarded." This cautionary admonition is modified by the final sentence in that paragraph, however, which provides: "The court, at its option, may notice a plain error not presented." This court is of the opinion that *Rohlfing, supra,* upon which three of appellant's four specifications of error are based, does not correctly state the law of Hawaii and reliance upon it is a plain error contemplated by the rule.

A similar issue was recently presented to this court

in *In re Taxes, Hawaiian Land Co.,* 53 Haw. 45, 487 P.2d 1070 (1971). In that case an issue of statutory application was raised for the first time in the reply brief. *Id.,* at 52. This court allowed both parties to submit further supplemental briefs on the matter. *Id.* We then listed three factors which should be considered before allowing a decision on an issue not raised in the opening brief: (1) whether the issue goes to the integrity of the fact finding process; (2) to what extent an error may have been correctable if properly raised; and (3) whether the issue involves questions of fact that were not but could have been fully developed in the trial court. *Id.* at 53. We concluded that "If none of these factors are present, it is well within our discretion to hear new legal arguments, especially if it involves a question of great public import." *Id.*

In the present case, appellant at trial had full opportunity to present his facts on all issues concerning damages. Overruling *Rohlfing* by this court merely rendered trial of one issue, that concerning decedent's excess earnings, superfluous. The great importance to the public of a proper interpretation of Hawaii's Survival Statute is obvious. Thus, we will consider the issue whether the decedent's excess earnings are a proper item of damages under HRS § 663-7.

Under HRS § 663-7 there survives in favor of the decedent's legal representative only such cause of action as the decedent himself had at the moment of his death. *Rohlfing* v. *Akiona, supra* at 377, 400. The crux of the majority opinion in *Rohlfing* was that an injured person has a right to recovery of all future earnings lost as a result of his injury and that the intervention of death should not divest the decedent's estate of that right.

We have come to the conclusion that the minority opinion in *Rohlfing* presents the most sound position on this issue; that an injured plaintiff is not entitled to recover damages "for any earnings he might be supposed

to make, if living, in that part of his life lost by reason of his injuries." *Krakowski* v. *The Aurora, Elgin & Chicago R.R.,* 167 Ill. App. 469, 472-73 (1912). As the decedent would not have been entitled to recover such earnings in his lifetime, it follows that his representative is not entitled to recover such earnings in a later survival action under HRS § 663-7.

Our interpretation of HRS § 663-7 is in accordance with the view of most states with statutes such as ours. In the majority of jurisdictions with both Survival and Wrongful Death statutes, recovery for lost earnings under the Survival Statute is not permitted beyond the time of death. McCORMICK, DAMAGES, § 94 (1935); PROSSER, TORTS, § 127 (4th ed. 1971); SPEISER, RECOVERY FOR WRONGFUL DEATH, § 14:4 (1966). *See, e.g., Farrington* v. *Stoddard,* 115 F.2d 96 (1st Cir. 1940); *O'Leary* v. *United States Lines Co.,* 111 F. Supp. 745 (D. Mass. 1953); *Ellis* v. *Brown,* 77 So. 2d 845 (Fla. 1955); *Hindmarsh* v. *Sulpho Saline Bath Co.,* 108 Neb. 168, 187 N.W. 806 (1922); *Gochenour* v. *St. Louis San Francisco Ry.,* 205 Okla. 594, 239 P.2d 769 (1952).

Our interpretation of HRS § 663-7 recognizes that the aim of the statutes in this area of the law is compensation for loss rather than punishment. Our wrongful death statute, HRS § 663-3, compensates a deceased's survivors for economic loss and deprivation of love, affection and companionship. Decedent's mother has already been awarded $30,000 under HRS § 663-3. To press HRS § 663-7 into service to further compensate the decedent's survivors for the loss of their loved one would result in excess damages, justifiable only on a theory of punishment, rather than compensation.

Our holding that future excess earnings are not an element of damages in an action under HRS § 663-7 renders irrelevant the first three specifications of error alleged by appellant, all of which concern the measure

of decedent's future excess earnings.

We turn now to appellant's fourth allegation. The appellant alleges as error the circuit court's refusal of two requested jury instructions. The first instruction sets out the injuries which the decedent allegedly suffered as a result of the automobile accident, as well as the criteria to be considered by the jury in fixing damages, in the event the injuries were found to be the proximate result of the accident.[4] The second instruction concerned the degree of certainty as to the amount of damages necessary for the appellant to meet her burden of proof.[5] The appellees urge that the requested instruc-

---

[4]Plaintiff's Instruction No. 31, refused, provided:

Plaintiffs claim that as a result of the accident of August 26, 1965, MICHAEL T. GREENE suffered the following injuries and conditions which ultimately resulted in his death:

Severe head injury
Cerebral edema and congestion
Brain stem injury .
Loss of consciousness
Cranial surgery
Tracheostomy wound
Jejunostomy
Pulmonary congestion and edema
Fractured nose
Cerebral concussion
Emaciation
Focal necrosis of the brain
Congestion of the liver
Acute renal congestion

If you find from the evidence that as a proximate result of the accident MICHAEL T. GREENE suffered the above injuries and conditions, or any of them, then in determining the damages to be awarded you may consider the following:

The severity of the symptoms or conditions;
The duration of the symptoms or conditions;
The pain and suffering created thereby;
The mental distress arising therefrom;
The length of said pain and suffering and mental distress;
The effect of medication to relieve the pain and suffering; and
Any other evidence which may be of assistance to you in arriving at a fair and impartial verdict.

[5]Plaintiff's Instruction No. 35, refused, provided:

The law never insists upon a higher degree of certainty as to the amount of damages than the nature of the case admits.

Thus, while plaintiff has the burden of proof on the issue of damages, she needs to produce only such evidence on that issue as the circumstances of the case allow.

tions were substantially covered by other instructions given by the court.[6]

The recurrent and nagging problem of selecting those instructions by which to inform the jury of the law applicable to the current case subjects the trial court to the danger of being "whipsawed by the obligation to give sufficient instructions and the opposing requirement not to give cumulative instructions." *Barretto* v. *Akau,* 51 Haw. 383, 399, 463 P.2d 917, 926 (1969). *See Tittle* v. *Hurlbutt,* 53 Haw. 526, 497 P.2d 1354 (1972). While "[i]t is generally considered error to refuse to give a requested instruction on a given point which is accurate and applicable though the point may have been unequivocally covered by a general instruction," *Young* v. *Price,* 50 Haw. 430, 439, 442 P.2d 67, 73 (1968), "the fact that more specific instructions are offered does not require the trial court to accept them and reject slightly more general instructions or give cumulative instructions on the same point." *Id.,* 50 Haw. at 450, 442 P.2d at 79 (Levinson and Marumoto, JJ., dissenting.)

Nevertheless, there are some clear signposts. In *Barretto* v. *Akau, supra,* 51 Haw. at 398, 463 P.2d at 926, we held that a plaintiff in a personal injury suit is "entitled to separate consideration as to each [alleged injury], any one of which might have supported an action for damages, although it [is] preferable to combine the instructions and eliminate repetition wherever possible." Plaintiff's Instruction No. 31 complied with these guidelines and cannot realistically be said to have been

---

[6]Court's Instruction No. 23, *supra,* n. 5, informed the jury that the measure of damages should include that sum of money which would fairly compensate the decedent's estate for " (a) the pain, suffering, and mental anguish which Michael T. Greene may have consciously suffered as a result of the accident . . . ."

Defendant's Instruction No. 5, given as modified, provided:

While the burden rests upon the party who asserts the affirmative of an issue to prove his claim by a preponderance of the evidence, this rule does not require demonstration, or such degree of proof as produces absolute certainty, since in human affairs absolute certainty is seldom possible.

covered adequately in Court's Instruction No. 23. Therefore, we hold that the circuit court erred in refusing to give it. On the other hand, Plaintiff's Instruction No. 35, while a correct statement of the proposition contained in *Coney v. Lihue Plantation Company, Ltd.,* 39 Haw. 129, 139 (1951), added nothing to Defendant's Instruction No. 5; refusal to give that instruction was a proper exercise of the circuit court's discretion.

Reversed and remanded for a new trial on the issue of the amount of damages accrued between the time of decedent's injury and the time of his death.

*Burnham H. Greeley (Padgett, Greeley, Marumoto & Steiner* of counsel) for plaintiffs-appellants.

*Dennis E. W. O'Connor* and *Peter G. Wheelon (Anthony, Hoddick, Reinwald & O'Connor* of counsel) for defendants-appellees.

---

DISSENTING OPINION OF LEVINSON, J.,
WITH WHOM KOBAYASHI, J., JOINS.

I dissent because I think that *Rohlfing* v. *Moses Akiona, Ltd.,* 45 Haw. 373, 369 P.2d 96 (1961), was decided correctly.

### I.

*Rohlfing* held, in effect, that those jurisdictions which have both survival and wrongful death statutes and which allow damages to be cut off at the date of death are misinterpreting the statutes, and I agree. The *Rohlfing* majority accurately characterized the source of an action under the survival statute as the injury rather than the loss of life:

Hence, under the survival statute the cause of action arises out of *the injury.* The injury may manifest itself in the loss of life instantly or subsequently, but the loss of life is not what gives rise to the cause of action. In contrast, an action under [the wrongful

death statute] arises out of the death. [45 Haw. at 383, 369 P.2d at 101.]

The court further elaborated on this principle:

> The touchstone is the right that was vested in the injured person at the moment of his death. It seems to us that a person mortally wounded cannot have less than the right to the present value of the sum, if any, that with due regard to his own cost of living and the care of his loved ones, would have been at his disposal during his lifetime had he been permitted to live it normally. If that is not a sound proposition then one can with equal justice urge that an injured person, alone in the world, who lies in a coma in a hospital and will never recover from it, has only a right to such sum as will maintain him in the hospital and nothing for lost earnings because, forsooth, he will not in future be able to spend anything; or that in any instance in which a person's earnings are more than he is ever likely to spend in his lifetime there should be no recovery for the excess since it will only go to his heirs anyway. [45 Haw. at 390, 369 P.2d at 105.]

While the issue of duplication of damages was not directly before the *Rohlfing* court on the facts of that case because that action was brought under the survival statute only, the court recognized this as a genuine problem and discussed it at length. It concluded that the legislature provided against this possibility by merging the common law wrongful death action into its statutory successor and by providing for consolidation of wrongful death and survival actions arising from the same incident. 45 Haw. at 394, 369 P.2d at 106-07.

The *Rohlfing* approach was noted with approval by Professor John G. Fleming in *The Lost Years: A Problem in the Computation and Distribution of Damages,* 50 Calif. L. Rev. 598, 606-07 (1962) :

The standard solution [to the conflict between wrongful death claims of the survivors and those of the heirs under survival statutes] is to allow the dependents the value of their expectancy and to allot the estate, as representing the decedent, his probable earnings limited to the span between injury and death. This disposition offers the tortfeasor adequate protection against double liability (even when the actions are not consolidated), but incidentally confers on him a disguised windfall by not mulcting him for the difference between the present worth of the decedent's likely earnings during his lost years, reduced by the probable cost of his maintenance, and the amount awarded to the dependents. In recognizing the estate's legitimate claim to such "excess earnings," Pennsylvania and Hawaii are thus far alone in offering a commendable departure from the customary formula. (Footnotes omitted.)

In contrast to *Rohlfing,* the majority in the present case is attempting to reconcile the wrongful death and survival statutes on the theory that duplication of damages can be avoided by the simple device of limiting recovery in the survival action to the date of death, with the wrongful death action then picking up any loss of earning capacity from death to the date of life expectancy prior to the injury. Unfortunately, in its headlong rush to avoid what it labels "punishment," the majority has lost sight of such considerations as the true goals of compensation, the fact that our statutory scheme already avoids duplication, and the impact of its decision upon the distribution of damages.

The goals of compensation have been set forth with clarity in prior decisions of this court: The general rule in measuring damages is to award such sum of money to the injured person as will restore him to the position he would have been in had the injury not occurred. *Rodrigues* v. *State,* 52 Haw. 156, 167, 472 P.2d 509, 517

(1970). Lost future earnings are one element of damages commonly arising from personal injuries which are properly chargeable against the tortfeasor. *Jendrusch* v. *Abbott,* 39 Haw. 506, 508-10 (1952). If the injury results in a permanent destruction of the ability to earn income, the wage loss may form a large portion of the total injury suffered, and evidence of this future loss is properly admissible for consideration by the jury. *Nakagawa* v. *Apana,* 52 Haw. 379, 391, 477 P.2d 611, 618 (1970). The sum of these goals, that injured parties must be compensated by the wrongdoer for the totality of their losses, has been overlooked by the majority in its narrow concentration on the problem of "punishment."

Under the Hawaii statutory scheme duplication of damages is easily avoided. The problem, of course, is certainly one which cannot be ignored. *See,* Martin, *Measuring Damages in Survival Actions for Tortious Death,* 47 Wash. L. Rev. 609, 621-28 (1972); Duffey, *The Maldistribution of Damages in Wrongful Death,* 19 Ohio St. L.J. 264, 268-76 (1958). But the functional result under *Rohlfing* is that a dependent's recovery is limited to his *net pecuniary loss,* because any support which he would have received must be deducted from that part of the estate to which he is entitled as an heir. 45 Haw. at 385-89, 369 P.2d at 102-04. This constitutes a built-in prevention of any double recovery. Again, this feature is commended by Professor Fleming:

> [A] more sophisticated disposition has recently been suggested which would actually offer him some measure of participation in the fund notionally represented by his lost years. According to this recommendation by the Hawaii court, it would be wholly proper to allow him the difference between his probable earnings during that period and the amount to which his dependents could lay a subsequent claim for loss of their expected support. Recognition of the decedent's title to such "excess earnings" has the un-

doubted advantage of forestalling the tortfeasor from any disguised windfall, insignificant though it may be in most cases, besides emphasizing that recovery based on normal life expectancy should be qualified only to the extent irreducibly necessary for sparing the tortfeasor from double liability. [50 Cal. L. Rev. at 613]

Perhaps the most important shortcoming of the majority's position is its refusal to acknowledge the impact of its broad-ranging language upon the distribution of damages. To rule that the probable future excess earnings of the decedent are not a proper item of damages in this case allows future defendants to obtain a windfall from their own actions. A benefit will be reaped when a victim is killed rather than injured.

There are a number of readily conceivable situations in which a tortfeasor will benefit under the majority's holding when an injury results in death rather than disability, thereby allowing the wrongdoer to escape all or part of his liability. Any situation in which a decedent has beneficiaries under his will or heirs who do not fall within those categories empowered to bring actions under the wrongful death statute, that is, any heir or beneficiary not supported by, or beneficiary not related to, the decedent, would result in the complete loss of an otherwise compensable damage. The fact that a dependent spouse, parent, or child has a valid action under the wrongful death statute offers no consolation to those who, in spite of an otherwise compensable interest, are now foreclosed from protecting it, especially in view of the fact that duplication of damages is already prevented in this jurisdiction.

Other interested parties, although they may appear with less frequency, are creditors and the state. The majority's opinion has a detrimental effect upon the interest of the creditors of an estate by virtue of the fact

that lost future earnings would likely be the largest single damage item; nor does our wrongful death statute list creditors among those groups empowered to use it. Also, any advantage accruing to the state under the escheat statute would be lost, resulting in a loss of revenue.

The inevitable conclusion is that, as a result of the majority's balancing of the two statutes, distribution is by item of damage rather than upon any considered policy decision as to the extent of the damage interest. This, in my opinion, is patently unfair to those who have been damaged by the wrongdoing of others.

## II.

Because I believe the *Rohlfing* decision was correct, it is necessary to address the other issues raised on appeal, for the reason that the legislature may now choose to amend the survival statute or the court may one day return to the proper interpretation.

### A. *The Deduction of Federal and State Income Tax from Award of Damages for Loss of Probable Net Excess Earnings.*

At trial, the circuit court instructed the jury that future federal and state income tax payments should be deducted from the present value of the decedent's likely earnings in determining the loss to his estate of probable net excess earnings. This instruction reflected the obvious fact that, had the decedent lived, his future gross earnings would have been taxable.[1]

---

[1]The appellant relies upon Kawamoto v. Yasutake, 49 Haw. 42, 51, 410 P.2d 976, 981 (1966), for the proposition that "the incidence of taxation is not a proper fact for a jury's consideration since 'it introduces a wholly collateral matter into the damage issue.'" The principle underlying that case is not applicable to the issue presented in the instant appeal, since it dealt with an attempt to have the jury told, in fixing damages for personal injury, that the award is not taxable. Here, the question is whether the jury should properly be instructed to take into account the fact that future earnings would be taxable.

In my opinion, the circuit court erred in so instructing the jury. I agree with the well-reasoned opinion of Chief Judge Friendly in *McWeeney* v. *New York, New Haven & Hartford Railroad Company*, 282 F.2d 34, 36-39 (2d Cir. 1960), *cert. denied*, 364 U.S. 870 (1960), that the pitfalls of presenting the jury with a task of such "delusive simplicity" outweigh whatever utility there might be. *Accord, Boston & Maine Railroad* v. *Talbert*, 360 F.2d 286, 291 (1st Cir. 1966) ;*Girard Trust Corn Exchange Bank* v. *Philadelphia Transportation Company*, 410 Pa. 530, 538, 190 A.2d 293, 297-98 (1963). Even assuming that the jury could estimate with any degree of accuracy the number of the decedent's probable exemptions, the dates when they would come into being, the rates to which the decedent would be subject, the deductions to which he would variously be entitled, and the particular state tax structures under which he would incur liability during his lifetime, the instruction fails to credit the decedent's estate with a number of offsetting factors. First,

> the theoretical measure of the loss of the plaintiff's earning capacity is that sum of money which if invested at a fair rate of return will yield annually the amount by which the plaintiff's earning capacity has been lessened and which will at the end of the plaintiff's life expectancy be reduced to zero. This takes account of the fact that money earns interest each year; and it should be remembered that *this interest is taxable*. Therefore, if a court is going to use income after taxes as a measure of plaintiff's loss, it must add back the taxes which would be due on the interest earned—else the award would not fully compensate for the loss.

Morris and Nordstrom, *Personal Injury Recoveries and the Federal Income Tax Law*, 46 A.B.A.J. 274, 328 (1960). Second, such an instruction exacerbates the role

of inflation and attorneys' contingency fees in diminishing the real recovery to a decedent's estate. A trial court should not permit the introduction of testimony relating to the likely incidence of tax liability which a decedent would have encountered but for his death or instruct the jury that such tax should be deducted from the measure of probable net excess earnings.[2]

### B. *The Hypothetical Wife and Children*

In *Rohlfing* v. *Moses Akiona, Ltd.*, 45 Haw. 373, 393, 369 P.2d 96, 106 (1961), this court declared the necessity of reducing an award to a decedent's estate for loss of excess earnings in such a way as "to eliminate the expenditures for decedent's own cost of living and the care of his family and dependents." With this caveat in mind, the appellees introduced evidence at trial, over the appellant's objection, that the decedent, had he lived, would probably have married and had two children, and that the cost of maintaining this hypothetical family over his life expectancy would have eliminated his excess earnings. The appellant contends that the circuit court's failure to exclude this evidence and to instruct the jury that it could not properly consider the effect of maintaining a hypothetical family upon a decedent's probable net excess earnings resulted in a disproportionately low jury award.

The appellees counter by urging that speculation is inevitable when excess earnings are at issue. They point

---

[2] I am aware of the warning in *McWeeney* that an added benefit might be bestowed upon the estates of decedents whose income levels were extraordinarily high. However, this possibility is counterbalanced by the salutary effect of the rule upon "the great mass of litigation at the lower or middle reach of the income scale, where future income is fairly predictable, added exemptions or deductions drastically affect the tax and, for the reasons indicated, the plaintiff is almost certain to be undercompensated in any event." McWeeney v. New York, New Haven & Hartford Railroad Company, 282 F.2d 34, 39 (2d Cir. 1960), *cert. denied,* 364 U.S. 870 (1960). *But cf.* Hartz v. United States, 415 F.2d 259, 264 (5th Cir. 1969); Cox v. Northwest Airlines, Inc., 379 F.2d 893, 896 (7th Cir. 1967), *cert. denied,* 389 U.S. 1044 (1968).

to numerous instances in the record where the appellant resorted to such speculation in establishing the decedent's probable level of future income. They argue additionally that the circuit court's instruction to the jury did not *require* the jury to deduct the cost of maintaining a hypothetical wife and two children from the excess earnings credited to the decedent's estate.

The appellee's arguments, however, misconceive the injunction of the *Rohlfing* case. Under *Rohlfing,* support money actually awarded to a widow or children under HRS § 663-3 must be deducted from the excess earnings to be credited under HRS § 663-7 to the decedent's estate, in order to prevent a double recovery by the decedent's dependents and heirs. But there can be no double recovery by a widow or by children who do not in fact exist. To deduct the cost of maintaining a hypothetical family from the award to which a decedent's estate is entitled would give a windfall to the defendant and literally make it cheaper to kill a single man than a married man with a family. Such a course of action is inconsistent with the policies articulated in *Rohlfing.*

I would hold that in connection with the award under HRS § 663-7 it was error for the circuit court to permit the jury to consider the cost of maintaining a hypothetical family. On the other hand, under HRS § 663-3 the jury awarded $30,000 to the appellant for pecuniary injury and loss of love and affection. This sum has been paid. Of course, there is no way of knowing how much of it, if any, was to compensate for pecuniary injury, *i.e.,* loss of support, and how much was to compensate for loss of love and affection. In any event, retrial of the appellant's claim under HRS § 663-7, which would be the only claim to be retried, poses no threat of double recovery; whatever sum the trier of fact finds would have been spent by the decedent in support of the appellant will by definition be excluded from the measure of probable net excess earnings.

## C. *The Hypothetical Questions*

The appellant's expert economist testified on direct examination that, in his opinion, the present value of the decedent's probable excess earnings should be determined on the basis of a 4% discount factor, the average yield of U.S. government bonds over a 50 year period. Over the appellant's objection and subsequent motion to strike, the appellees were permitted to elicit an estimate from the witness based on a discount rate of 6%. The appellant argues that the assumption that 6% was a proper discount rate was unsupported by any evidence adduced at trial; she therefore maintains that to question the witness on that basis contravened the mandate of *Barretto* v. *Akau,* 51 Haw. 383, 388, 463 P.2d 917, 921 (1969), wherein we stated that:

> While the authorities are divided on this issue, we think that in cross-examining an expert witness a question aimed at demonstrating an alternative theory or contesting a substantive element of the case may be based on (1) those facts already in evidence, (2) those facts which are the proper subject of judicial notice, and (3) those facts which the cross-examiner in good faith anticipates he will establish later in the trial. If the cross-examiner fails to prove the facts assumed in his hypothetical question, then a motion to strike by opposing counsel is appropriate to cure the defect. (Citations omitted.)

I think that a proper foundation was laid for calculation of present value based on a 6% discount rate, and that therefore the circuit court did not err in permitting the questions. The expert witness testified on cross-examination that several varieties of investments would currently yield greater than a 6% return. Although he maintained that to reduce future excess earnings to present value at that rate would not be economically "rational," in light of the risk which an investor would be required

to take in order to obtain that rate of return, the question was ultimately one for the trier of fact to resolve on the basis of the evidence presented.

## D. The Requested Jury Instructions

I am in agreement with the majority's opinion on this issue.