Perry D. **JENKINS**, Annabelle Jenkins, and Stuart A. Kaneko as Special Administrator of the Estate of Jeffrey Scott Jenkins, Deceased, Plaintiffs,

v.

**WHITTAKER CORPORATION**, dba Bermite Corporation, a Division of Whittaker Corporation, a California corporation, Defendant.

Perry D. **JENKINS**, Annabelle Jenkins, and Stuart A. Kaneko as Special Administrator of the Estate of Jeffrey Scott Jenkins, Deceased, Plaintiffs,

v.

**WHITTAKER CORPORATION**, dba Bermite Corporation, a Division of Whittaker Corporation, a California corporation, John Does 1–10, Doe Corporations 1–10, and Doe Partnerships 1–10, Defendants.

Civ. Nos. 80–0195, 80–0263.

United States District Court, D. Hawaii.

Nov. 22, 1982.

---

Paul F. Cronin, John D. Thomas, Jr., Honolulu, Hawaii, for plaintiffs.

Burnham H. Greeley, Susan P. Walker, Honolulu, Hawaii, Ronald M. Greenberg, Marianne Goodwin, Los Angeles, Cal., for defendants.

## ORDER

SAMUEL P. KING, Chief Judge.

### BACKGROUND

Defendant Whittaker Corporation ("Whittaker") filed its Motion for Summary Judgment on Count IV which seeks punitive damages. Defendant asserts (1) that punitive damages may not be awarded under the Hawaii Wrongful Death Act, Hawaii Rev.Stat. § 663–3, (2) that even assuming such an action may be maintained, there is no evidence of conduct sufficient to support a punitive damage claim, and (3) that defendant, as a corporation, cannot be held liable because there was no express or implied authorization or ratification of the alleged tortious act by corporate executives or by persons wielding executive power.

For the reasons stated herein, defendant's motion is GRANTED.

### DISCUSSION

Whittaker argues that punitive damages may not be awarded under the Hawaii Wrongful Death Act because the inherent purpose of damages in wrongful death actions is compensatory rather than punitive. *Greene v. Texeira,* 54 Haw. 231, 505 P.2d 1169 (1973). Defendant also relies on *In re Air Crash Disaster Near Chicago, Ill.,* 644 F.2d 594, 630–32 (7th Cir.1981), which interpreted the Hawaii Wrongful Death Act as

prohibiting punitive damages. Arguing from this, Whittaker asserts that the "compensatory" rationale of *Greene* should be extended to the Hawaii survival statute and thus that plaintiffs are prohibited from being awarded punitive damages under the survival statute as well.

Plaintiffs respond that the decedent, had he lived, would have had a cause of action for punitive damages against Whittaker and that this cause of action survived in favor of his estate representative under the Hawaii survival statute, Hawaii Rev.Stat. § 663–7. Plaintiffs assert that Whittaker has confused this action for punitive damages under the Hawaii survival statute with an action under the Hawaii Wrongful Death Act. Since plaintiffs appear to concede that punitive damages are unavailable in a wrongful death action, the Court will address only whether punitive damages may be awarded under the Hawaii survival statute.

The Hawaii Supreme Court has held that "[u]nder HRS Section 663–7 there survives in favor of the decedent's legal representative only such cause of action as the decedent himself had at the moment of his death." *Greene,* 54 Haw. at 235, 505 P.2d 1169. The court reasoned that recovery for a cause of action that did not survive the decedent would amount to "excess damages, justifiable only on a theory of punishment, rather than compensation." *Id.* at 236, 505 P.2d 1169. However, the court did not hold that actions for punitive damages do not survive the decedent, only that recovery for damages to which decedent was not entitled amounted to punishment and therefore was impermissible under the survival statute. The essential issue in this motion is whether the decedent, were he alive, could have recovered punitive damages in the product liability context under Hawaii law.

■ In *Vollert v. Summa Corp.,* 389 F.Supp. 1348 (D.Haw.1975), this Court held that punitive damages may be recoverable under Hawaii law in an action to recover for personal injuries suffered by the plaintiff in a helicopter accident at the Honolulu International Airport. The Court noted that, although the Hawaii Supreme Court had not faced the issue of punitive damages in product liability cases, "there is nothing in the Hawaii cases dealing with punitive damages which would permit this court to hold that a claim for punitive damages cannot be maintained here." 389 F.Supp. at 1350. The Court therefore concludes that, because the decedent would have had an action for punitive damages had he survived, it follows that his estate representative is entitled to recover for punitive damages under Hawaii Rev.Stat. § 663–7.

Defendant's motion also argues that the undisputed evidence shows that the plaintiffs cannot support their punitive damages claim in fact. The Court, however, need not decide the question owing to its resolution of the third ground asserted by Whittaker.

Assuming arguendo that there are genuine issues of material facts with respect to defendant's conduct, the question remains whether punitive damages are recoverable against corporate defendants such as Whittaker.

■ The law in Hawaii regarding a corporation's liability for punitive damages appears well-settled. Punitive damages may be recovered against a corporate defendant only if the corporation expressly or impliedly authorized or ratified the tortious act of its agent. *Baldwin v. Hilo Tribune-Herald, Ltd.,* 32 Haw. 87, 106–09 (1931); *Chin Kee v. Kaeleku Sugar Co., Ltd.,* 29 Haw. 524, 537 (1926). Furthermore, any such authorization or ratification must come from "officers or any other person actually wielding the executive power of the corporation." *Kealoha v. Halawa Plantation Ltd.,* 24 Haw. 579, 588 (1918), *quoted in Chin Kee,* 29 Haw. at 537; *see also* W. Prosser, *Handbook of the Law of Torts* § 2, at 12 (4th ed. 1971).

In the present case, plaintiffs have neither alleged facts nor produced evidence that would indicate Whittaker, acting as a corporation, expressly or impliedly authorized the allegedly tortious act.

Therefore, although plaintiffs may have a cause of action for punitive damages under the Hawaii survival statute, they cannot support such a cause of action on the record now before the Court.

Accordingly, IT IS HEREBY ORDERED AND ADJUDGED that the defendant's Motion for Summary Judgment on Count IV is GRANTED.

## ORDER

### On Motions In Limine and for Summary Judgment

#### BACKGROUND

Plaintiffs have filed a motion in limine requesting that defendant Whittaker Corporation ("Whittaker") be prohibited from arguing to the jury that Whittaker cannot be liable for design or assembly defects on the grounds that Whittaker followed the plans and specifications of the government in the manufacture of the allegedly defective atomic simulator. Whittaker, on the other hand, has filed a motion for summary judgment on the issue of liability based on design defects on the grounds that it did not design the defective simulator. Because of the similarity of the issues raised in the plaintiffs' motion in limine and the defendant's motion for summary judgment, the Court will treat them as cross-motions on the same issue and deal with them together in this opinion and order.

#### DISCUSSION

Whittaker asserts in its motion for summary judgment that, where a product is manufactured strictly in accordance with government specifications, the manufacturer is protected from liability for design defects in any respect in which the product complies with those specifications. Whittaker cites *Littlehale v. E.I. DuPont de Nemours Co.,* 268 F.Supp. 791 (S.D.N.Y. 1966), *Hunt v. Blasius,* 55 Ill.App.3d 14, 12 Ill.Dec. 813, 370 N.E.2d 617 (1977), and *Sanner v. Ford Motor Co.,* 144 N.J.Super. 1, 364 A.2d 43 (1976), to support its position. Plaintiffs, on the other hand, argue that because Hawaii has adopted strict liability in tort, a manufacturer cannot defend itself on the ground that the allegedly defective design was designed by the military rather than the manufacturer. Plaintiffs also assert that Whittaker actually participated in the design process, but they contend primarily that the only relevant inquiry is whether the product was defective when it left Whittaker's control.

The law on this issue is unsettled. Although the cases cited by Whittaker have affirmed the non-liability of an independent contractor or manufacturer who manufactured strictly in accordance with governmental specifications, the cases are distinguishable on the facts. In *Littlehale,* the defendant, an explosives manufacturer, was found not liable because he had no discretion or control over the strict manufacturing specifications. However, the holding was based on specific findings that not only did the defendant fully comply with the manufacturing specifications and manufacture the blasting caps without defects, 268 F.Supp. at 795–796, but also that there were no allegations that defendant was involved in the design process, as in the instant case. The defendant's lack of involvement in the design process is especially evident in the other two cases cited by Whittaker, *Sanner v. Ford Motor Co.* (defendant not liable for failure to include seat belts in jeeps when the omission was at the specific insistence of the United States Army), and *Hunt v. Blasius* (defendant not liable for manufacturing and installing an exit sign pole in accordance with state's design and specifications). Thus, *Littlehale, Sanner* and *Hunt* are distinguishable on their facts.

Plaintiffs, on the other hand, assert that under Hawaii law Whittaker is strictly liable if the atomic simulator left Whittaker's hands in a defective condition due to either manufacturing or design defects irrespective of whether the device was designed by the United States government. Plaintiffs rely on *Stewart v. Budget Rent-a-Car,* 52 Haw. 71, 470 P.2d 240 (1970), for this proposition. *Stewart* and the subsequent cases of *Brown v. Clark Equipment Company,* 62 Haw. 530, 618 P.2d 267 (1980), and *Beermann, et al. v. Toro Manufacturing Corp.,*

*et al.,* 1 Haw.App. 111, 615 P.2d 749 (1980), all involved manufacturers who not only manufactured but also designed the injury causing products. In the present case, unlike *Stewart* and its companion cases, design and manufacture for the most part involved two distinct parties. Thus, although Hawaii has adopted strict liability, the Hawaii Supreme Court has not ruled in a situation like that at bar which involves the strict liability of a manufacturer who manufactured a product pursuant to the design specifications of the government.

A helpful case in this area is *Challoner v. Day Zimmerman, Inc.,* 512 F.2d 77 (5th Cir.1975), *vacated and remanded for determination and application of Texas conflict of law rule,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1976). There the court did apply strict liability to the manufacturer of a prematurely exploding shell even though the design was under the exclusive control of the United States. The court rejected the defendant's contention that it was shielded from liability because it merely followed the government's specifications.

In *In re Agent Orange Product Liability Litigation,* 534 F.Supp. 1046 (E.D.N.Y.1982), on the other hand, the court upheld the defense that the defendant manufactured a product in accordance with the design specifications of the government, even though the defendant had participated in the design process. The court, however, did hold the defendant manufacturer liable for any hazards that were within its actual knowledge. *Id.* at 1056.

The court's ruling relied heavily upon the rationale that the law should not "require suppliers of ordnance to question the military's needs or specifications for weapons during wartime." *Id.* at 1054. *Agent Orange,* therefore, should be limited to cases involving the manufacture of "weapons during wartime." In the present case, the atomic simulator was not a device used as a weapon. Instead it was used for demonstration purposes. Furthermore, it was not designed under the urgency of wartime. Accordingly, *Agent Orange* is inapposite to the case at bar.

In the civilian context, it was recently held that an independent contractor who rebuilt a machine according to the owner's specifications could be held strictly liable for injuries to foreseeable users of the machine. *Michalko v. Cooke Color Chemical Corp.,* 91 N.J. 386, 451 A.2d 179 (1982). There, the independent contractor was aware of a lack of safety devices in the design but took no action to correct it. Moreover, the contractor failed to warn the owner or to affix warnings to the machine of this safety defect. The court reasoned that "adherence or reliance upon the owner's plans, even though required by its contract, is ... irrelevant. What is important is that the defect did in fact exist when the product was distributed by and was under the control of the contractor." *Id.* at 396, 451 A.2d 179. The court held the contractor strictly liable.

■ Here, the allegation is that the product left Whittaker in a defective condition. Furthermore, plaintiffs have alleged and supported by exhibits and affidavits that Whittaker had some involvement in the design of the atomic simulator. Under the circumstances, the Court finds that material issues of fact remain with respect to Whittaker's involvement in or responsibility for the design of the atomic simulator. The Court, therefore, must and hereby does DENY the defendant's Motion for Summary Judgment on this issue.

■ As to the plaintiffs' Motion in Limine, the Court finds that the better view of the law in this area, and the view that would be adopted by the courts of the State of Hawaii under similar circumstances, is that Whittaker may be held liable under a strict liability theory if the atomic simulator was defective in either manufacture or design at the time it left Whittaker's control.

Accordingly, the Court hereby GRANTS plaintiffs' motion and, subject to further order of the Court, ORDERS that Whittaker will be prohibited from arguing to the jury that Whittaker cannot be held liable for design or assembly defects because

Whittaker followed the plans and specifications of the government in the manufacture of the allegedly defective atomic simulator.

SO ORDERED.